RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
SEAN A. MCCLELLAND
Assistant Federal Public Defender
Nevada State Bar No. 16581
HEIDI A. OJEDA
Assistant Federal Public Defender
Nevada State Bar No. 12223
200 S. Virginia Street, Suite 340
Reno, Nevada 89501
(775) 321-8451
Sean_McClelland@fd.org
Heidi_Ojeda@fd.org

Attorneys for LEONARDO F. BLUNDO

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>LEONARDO F. BLUNDO,<br>Defendant. | Case No. 2:26-cr-00034-JAD-EJY<br>**MOTION TO DISMISS FOR OUTRAGEOUS GOVERNMENT CONDUCT OR, ALTERNATIVELY, FOR DISCOVERY**<br>[Evidentiary Hearing Requested] |

## I. INTRODUCTION

Leo Blundo is the chair of the Nye County Republican Party. He is under federal indictment in a case from which the Department of Justice (DOJ) reportedly recused Sigal Chattah (the former head of the U.S. Attorney's Office)—his political rival[1]—because of her

[1] *See* Melissa Blundo Decl. ¶¶ 5, 8–10, Ex. K; Troy La Mana Decl. ¶¶ 7–12, Ex. L. Citations to lettered exhibits refer to the exhibits filed with Mr. Blundo's companion motion to dismiss for vindictive and selective prosecution.

conflicts of interest.[2] Federal law disqualifies any DOJ prosecutor from a case in which her participation may create a personal or political conflict of interest, or the appearance of one.[3] Congress recognized the gravity of that command by authorizing the DOJ to promulgate rules making a "willful violation" punishable by "removal from office."[4] Yet according to Bloomberg Law's reporting—based on three people familiar with this matter—Ms. Chattah did not honor DOJ's recusal directive to her in this case. Despite warnings that she was "disregarding recusals signed by the deputy attorney general's office," she reportedly sought status updates from the prosecutors handling Mr. Blundo's case.[5]

This motion does not ask the Court to decide Ms. Chattah's reasons for her reported engagement in this case. Mr. Blundo's companion motion addresses motive: it details Ms. Chattah's reported animus toward him and seeks dismissal for vindictive and selective prosecution.[6] This motion turns on the reported violations themselves. If the reporting is accurate, Ms. Chattah supervised this prosecution in knowing violation of a DOJ-ordered, statutorily grounded disqualification order and warrants dismissal of this indictment whatever Ms. Chattah's motives.

---

[2] Ben Penn, *Trump's Chief Nevada Prosecutor Shirks DOJ Orders, Boosts Allies*, BLOOMBERG LAW (June 3, 2026), Ex. A at 1, 4, also available at https://news.bloomberglaw.com/us-law-week/trumps-chief-nevada-prosecutor-shirks-doj-orders-boosts-allies; Sarah N. Lynch, *FBI closes 2020 election fraud inquiry ordered by Nevada's top federal prosecutor, sources say*, CBS NEWS (Mar. 12, 2026), Ex. M at 3–6, also available at https://www.cbsnews.com/news/fbi-closes-2020-election-fraud-inquiry-nevada/..

[3] 28 U.S.C. § 528; 28 C.F.R. § 45.2(a).

[4] 28 U.S.C. § 528.

[5] Ex. A at 1, 4; Ex. M at 4–5.

[6] Mr. Blundo is contemporaneously moving to dismiss this indictment for vindictive and selective prosecution. That motion details Ms. Chattah's reported history with Mr. Blundo and this case's full background. The two motions present distinct grounds. That motion turns on the motive behind this prosecution. This motion, however, turns on the reported recusal violations themselves.

Indeed, if the reporting is accurate, dismissal is warranted twice over. The Court's supervisory powers permit dismissal where there is "flagrant misbehavior," "substantial prejudice," and "no lesser remedial action" available.[7] The reported conduct here is that: repeated, warning-defying violations of a recusal order, in a case the government had declined to charge for over four years. The same conduct independently violates due process, which requires dismissal when government conduct "violates fundamental fairness."[8] Such misconduct warrants dismissal of this case with prejudice. At a minimum, the Court should order the discovery specified in the companion motion—which this motion separately requires—and hold an evidentiary hearing. The documents that would confirm or refute the reported violations sit exclusively in the government's files.

## II. BACKGROUND

### A. Congress bars conflicted prosecutors from participating in affected cases and treats willful violations as grounds for removal from office.

The full history of this prosecution—four years of investigative closures and declinations, Ms. Chattah's arrival, the reported recusal, and the indictment—is set out in the companion motion.[9] This motion incorporates that account by reference and summarizes only the facts specific to the recusal violations.

Congress has addressed prosecutorial conflicts of interest directly. Under 28 U.S.C. § 528, the Attorney General is required to promulgate rules disqualifying any DOJ officer or employee—including anyone performing a U.S. Attorney's duties—from any investigation or prosecution in which her participation "may result in a personal, financial, or political conflict

---

[7] *United States v. Chapman*, 524 F.3d 1073, 1085, 1087 (9th Cir. 2008); *accord United States v. Bundy*, 968 F.3d 1019, 1031 (9th Cir. 2020).

[8] *United States v. Stinson*, 647 F.3d 1196, 1209 (9th Cir. 2011); *see United States v. Russell*, 411 U.S. 423, 431–32 (1973).

[9] *See* Vindictive & Selective Prosecution Motion at 3–15 (Background).

of interest, or the appearance thereof."[10] The statute then states a potential consequence Congress contemplated for defiance of those rules: they "may provide that a willful violation of any provision thereof shall result in removal from office."[11]

The implementing regulation forbids a DOJ employee from participating in a prosecution where she has a "personal or political relationship" with anyone substantially involved in the underlying conduct, or with anyone whose interests would be directly affected by the prosecution's outcome.[12]

**B. DOJ reportedly recused Ms. Chattah from this case, and she reportedly violated that recusal, repeatedly and over warnings.**

In June 2026, Bloomberg Law published an investigation of Ms. Chattah's tenure based on interviews with two dozen Nevada lawyers and former law-enforcement officials.[13] Per that reporting, the Deputy Attorney General's office applied the disqualification framework to Ms. Chattah and this case: it recused her from the investigation of "a Nevada Republican county commissioner with whom Chattah had a shared history"—a fraud matter that the article's online version links to the press release announcing Mr. Blundo's indictment.[14] CBS News has similarly reported that the Deputy Attorney General's office has "issued a memo ordering [Ms. Chattah] to recuse herself" in at least six cases "involv[ing] people who had political ties to Chattah before she joined the Justice Department"—including political rivals.[15] One of those

---

[10] 28 U.S.C. § 528.

[11] *Id.*

[12] 28 C.F.R. § 45.2(a).

[13] *See generally* Ex. A.

[14] Ex. A at 4; *see* U.S. Att'y's Office (D. Nev.), *Former Nye County Commissioner Indicted For COVID-19 Relief Fraud Totaling More Than $500,000* (Mar. 11, 2026), https://www.justice.gov/usao-nv/pr/former-nye-county-commissioner-indicted-covid-19-relief-fraud-totaling-more-500000.

[15] Ex. A at 4.

cases, per CBS News's reporting, is Mr. Blundo's.[16] The defense asked the government to confirm the reported recusal;[17] the assigned AUSA did not respond.[18]

Per the same reporting, Ms. Chattah did not honor the recusal. Three people familiar with the matter recounted to Bloomberg Law that she "repeatedly sought status updates from prosecutors investigating" this matter, "despite a DOJ recusal blocking her from engaging in the Covid-19 fraud matter."[19] That conduct came with notice: the reporting describes "warnings that she was disregarding recusals signed by the deputy attorney general's office in Washington that barred her involvement in matters where she had conflicts of interest."[20] Per the reporting, bypassing DOJ recusals is a recurring feature of Ms. Chattah's tenure.[21]

## III. ARGUMENT

Mr. Blundo moves to dismiss this indictment for outrageous government conduct under the Court's supervisory powers and the Due Process Clause. If the reporting is accurate, the prior lead federal prosecutor for this District repeatedly involved herself in this case in knowing violation of a recusal order. That conduct supplies each element of a supervisory-powers dismissal: flagrant misbehavior, substantial prejudice, and no available lesser remedy.[22] It also

---

[16] *Id.* at 5 ("On Thursday, Chattah used her X account—which still refers to her as a U.S. Attorney—to comment on one of the six cases from which she was ordered to recuse. The case involves the recent indictment of Nye County Republican Commissioner Leo Blundo, who is accused of committing fraud against a government program that gave small businesses loans to keep them afloat during the COVID-19 pandemic.").

[17] The recusal memorandum is among the documents sought in the companion motion's discovery requests. *See* Vindictive & Selective Prosecution Motion at 34.

[18] On July 17, 2026, the defense asked the assigned AUSA to confirm whether Ms. Chattah was recused at the time of the indictment. As of this filing, the assigned AUSA has not responded.

[19] Ex. A at 4.

[20] Ex. A at 1.

[21] Ex. A at 1, 3–4; Ex. M at 3–6.

[22] *Chapman*, 524 F.3d at 1085, 1087.

independently violates due process.[23] Either ground supports dismissal with prejudice. And at a minimum, the reported violations warrant discovery and an evidentiary hearing.

Federal courts hold supervisory powers "to implement a remedy for violation of recognized rights, to preserve judicial integrity . . . and . . . as a remedy designed to deter illegal conduct."[24] Under those powers, a court may dismiss an indictment with prejudice where there is "flagrant misbehavior" and "substantial prejudice," and where "no lesser remedial action" is available.[25] Dismissal on this ground is appropriate "even if the conduct does not rise to the level of a due process violation."[26] These powers are not theoretical. In *Chapman*, for instance, the Ninth Circuit affirmed dismissal with prejudice where the district court found the government had acted "flagrantly, willfully, and in bad faith."[27] In *Bundy*, it did so again.[28] And it has affirmed dismissal of an indictment where the manner in which the government obtained it "represented a serious threat to the integrity of the judicial process."[29]

Due process supplies a second, independent path. An otherwise lawful charging decision is still barred when the government's conduct is "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction."[30] Dismissal on this ground is "limited to extreme cases" in which the government's

---

[23] *Russell*, 411 U.S. at 431–32; *Stinson*, 647 F.3d at 1209.

[24] *United States v. Hasting*, 461 U.S. 499, 505 (1983).

[25] *Chapman*, 524 F.3d at 1085, 1087; *accord Bundy*, 968 F.3d at 1031; *see also United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991) (an indictment "may be dismissed with prejudice under either of two theories": outrageous conduct amounting to a due process violation, or the supervisory powers).

[26] *Bundy*, 968 F.3d at 1030 (quotation omitted).

[27] *Chapman*, 524 F.3d at 1080, 1088–89.

[28] *Bundy*, 968 F.3d at 1030–31.

[29] *United States v. Samango*, 607 F.2d 877, 884–85 (9th Cir. 1979).

[30] *Russell*, 411 U.S. at 431–32; *accord Bundy*, 968 F.3d at 1030.

conduct "violates fundamental fairness."[31] Outrageous-conduct claims often involve coercion or the government's role in creating the offense. But those categories are not exclusive: "[t]here is no bright line dictating when law enforcement conduct crosses the line between acceptable and outrageous," so each case turns "on its own particular facts."[32] And while such dismissals are rare, courts order them where the government's conduct corrupts the prosecution itself rather than the evidence.[33]

Both paths converge on a settled requirement: a disinterested prosecutor. The United States Attorney "is the representative not of an ordinary party to a controversy, but of a sovereignty . . . whose interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done."[34] *Young v. United States ex rel. Vuitton et Fils S.A.* makes this requirement concrete.[35] There, the Court held under its supervisory powers that a prosecutor laboring under a disqualifying conflict may not conduct the prosecution—and that the conflict is judged by its existence, not by proof that it altered any specific decision.[36] A prosecutor so

---

[31] *Stinson*, 647 F.3d at 1209.

[32] *United States v. Black*, 733 F.3d 294, 302 (9th Cir. 2013) (quoting *United States v. Bogart*, 783 F.2d 1428, 1438 (9th Cir. 1986), *vacated in part on other grounds sub nom. United States v. Wingender*, 790 F.2d 802 (9th Cir. 1986)); *see Bundy*, 968 F.3d at 1030.

[33] *See, e.g.*, *United States v. Twigg*, 588 F.2d 373, 380–81 (3d Cir. 1978) (reversing convictions where government agents orchestrated the charged offense); *Greene v. United States*, 454 F.2d 783, 786–87 (9th Cir. 1971) (similar); *United States v. Marshank*, 777 F. Supp. 1507, 1523–24 (N.D. Cal. 1991) (dismissing an indictment under both the Due Process Clause and the supervisory powers where the government collaborated with the defendant's own attorney through indictment); *United States v. Sabri*, 973 F. Supp. 134 (W.D.N.Y. 1996) (similar).

[34] *Berger v. United States*, 295 U.S. 78, 88 (1935).

[35] 481 U.S. 787 (1987).

[36] *Id.* at 810–11 (plurality opinion) (a disqualifying conflict, "once identified," is assessed by its gravity, not by a showing that it produced misconduct).

conflicted, the Court explained, is improperly "serv[ing] two masters," and a charging process run that way cannot carry the assurance of disinterest that a fair prosecution demands.[37]

For similar reasons, prosecutorial decisions infected by "a personal interest, financial or otherwise" raise serious constitutional concerns because they "may bring irrelevant or impermissible factors into the prosecutorial decision."[38] The Supreme Court has exercised the supervisory power on this recusal subject before. In *Young*, for instance, it categorically barred interested prosecutors from conducting criminal contempt prosecutions—without asking whether the interest changed any particular outcome.[39] Dismissal is warranted for similar conduct.[40]

---

[37] *Id.* at 813–14 (plurality opinion).

[38] *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 249–50 (1980).

[39] 481 U.S. at 802–09 (majority opinion); *see id.* at 809–14 (plurality opinion) (concluding that such error requires reversal without harmless-error review).

Dismissal here does not rest on a violation of internal DOJ policy standing alone. *Cf. United States v. Snell*, 592 F.2d 1083, 1087 (9th Cir. 1979) (violation of DOJ's successive-prosecution policy, without more, does not warrant dismissal); *United States v. Caceres*, 440 U.S. 741, 754–57 (1979) (good-faith violation of the IRS's internal electronic-surveillance regulations did not require suppression).

Rather, this case presents an apparently knowing violation of statutorily created recusal rules. Those rules are not internal housekeeping: Congress mandated them by statute and attached a potential removal sanction, 28 U.S.C. § 528, and *Caceres* itself distinguishes regulations whose adoption the Constitution or a federal statute requires, *see* 440 U.S. at 749 (reasoning that exclusion was unwarranted in part because "the agency was not required by the Constitution or by statute to adopt any particular procedures or rules"—unlike here, where Congress required the recusal rules by statute). And the reported violations here were not one-time missteps: they reportedly persisted over multiple warnings. Ex. A at 1, 4. In any event, the violations matter here as flagrant misbehavior under the Court's supervisory powers and as conduct violating fundamental fairness—not as a freestanding claim that policy violations alone warrant dismissal.

[40] *See Young*, 481 U.S. at 809–14 (plurality opinion) (reversing conviction because conflict-violating prosecutions are errors "so fundamental and pervasive that they require reversal without regard to the facts or circumstances of the particular case").

Mr. Blundo does not minimize how rare these dismissals are. Outrageous-conduct relief is "limited to extreme cases," and supervisory-powers dismissal requires flagrancy, prejudice, and the failure of every lesser remedy.[41] But the rarity of the remedy reflects the rarity of the predicate. In the ordinary case, no one disqualified the prosecutor. Here, per the reporting, DOJ itself did, and she pressed forward anyway. If that reporting is accurate, such conduct warrants dismissal.

### A. Dismissal is warranted under this Court's supervisory powers.

#### 1. If the reporting is accurate, Ms. Chattah's recusal violations are "flagrant misbehavior."

The reported conduct satisfies the first supervisory-powers element. The violations breached a congressional recusal command. They were, as reported, knowing and repeated. And they taint this prosecution. Together these violations constitute "flagrant misbehavior" and due-process violating conduct for dismissal purposes.[42]

##### a. The reported violations breached a congressional recusal command.

Flagrancy is measured against the rule violated.[43] The rule here was not office protocol. Congress required the disqualification rules at issue,[44] and Congress authorized the DOJ to promulgate rules that require "removal from office" if a prosecutor knowingly violates a recusal requirement.[45] By allowing the DOJ to require removal, Congress signaled the seriousness of a potential recusal violation. And the reported conduct—continued participation in a specific

---

[41] *Stinson*, 647 F.3d at 1209; *Chapman*, 524 F.3d at 1085, 1087.

[42] *Chapman*, 524 F.3d at 1085, 1087.

[43] *See Caceres*, 440 U.S. at 749.

[44] 28 U.S.C. § 528.

[45] *Id.*

case, after a specific recusal, over specific warnings—is the conduct the statute specifically forbids.[46] If the reporting is accurate, the misbehavior is flagrant by Congress's own measure.

**b. The violations were, as reported, knowing and repeated.**

As reported, the violations were not inadvertent. Per Bloomberg Law, Ms. Chattah "frequently sought status updates on cases despite warnings that she was disregarding recusals signed by the deputy attorney general's office."[47] And as to this case specifically, three people recounted her "repeated[]" status-update demands "despite a DOJ recusal blocking her from engaging in the Covid-19 fraud matter."[48] Conduct that continues past such warnings is knowing conduct.[49] The reported repetition compounds the point. Per Bloomberg Law's and CBS News's sources, conduct bypassing DOJ recusals has recurred across Ms. Chattah's tenure.[50]

**c. The reported misconduct categorically taints this prosecution.**

The government may respond that Ms. Chattah's reported involvement was benign—or that the line prosecutors charged this case on their own judgment. Neither response cures the defect. Every defendant is entitled to a charging process and prosecution run by disinterested prosecutors on legitimate grounds.[51] That is why *Young* barred interested prosecutors categorically rather than case-by-case.[52]

---

[46] Ex. A at 1, 4; *see also* Ex. M at 4–5.

[47] Ex. A at 1.

[48] *Id.* at 4; *see also* Ex. M at 4–5.

[49] *See* Ex. A at 1, 3–4 (describing bypassed recusals as a recurring feature of Ms. Chattah's tenure); Ex. M at 3–6 (similar).

[50] Ex. A at 1, 3–4, 6; Ex. M at 3–6.

[51] *Berger*, 295 U.S. at 88; *Marshall*, 446 U.S. at 249–50.

[52] *See Young*, 481 U.S. at 802–09.

Here, the reported facts trace the interference to Ms. Chattah herself. She previously led the office. Per the reporting, she monitored this case in violation of her recusal while holding that position.[53] And on February 20, 2026—roughly two weeks before the indictment in this case—the office's career First Assistant United States Attorney and career criminal chief departed, apparently related to Ms. Chattah's efforts to "exorcise the District of Nevada."[54] Then, after Mr. Blundo's indictment was issued (and despite the reported recusal), Ms. Chattah posted publicly on X about it, then deleted the post after a reporter asked the DOJ for comment.[55]

The companion motion explains why the resulting prosecution is unconstitutional and this motion incorporates that analysis.[56] For present purposes, however, the point is narrower. The supervisory-powers inquiry does not turn on motive. The flagrant misbehavior is the recusal violation itself. And that is established, if the reporting is accurate, without any finding about what Ms. Chattah intended.

Taken together, the reported conduct is "flagrant misbehavior." If reporting is accurate, Ms. Chattah broke a recusal command. That reported conduct was knowing and repeated—and pressed over explicit warnings. And it ran through the top of the office, affecting the charging process. A prosecution supervised that way is the sort of "flagrant misbehavior" that supervisory power exists to remedy—and, for the same reasons, a charging process that violates fundamental fairness. That warrants dismissal.

---

[53] Ex. A at 1, 4; Ex. M at 4–5.

[54] Sigal Chattah (@Chattah4Nevada), X (May 31, 2026, at 8:54 p.m.), https://perma.cc/3VAS-BJA3; *see* Ex. A at 3.

[55] Ex. M at 6.

[56] *See* Vindictive & Selective Prosecution Motion at 15–30.

**2. Mr. Blundo has suffered substantial prejudice.**

The second supervisory-powers element is met as well because Mr. Blundo suffered substantial prejudice. For over four years, investigators and prosecutors declined to charge Mr. Blundo. The relevant administrative agency closed the case in July 2023 for "[l]ack of prosecutorial interest,"[57] and closed it again in September 2024 because it did "not fall within SBA-OIG guidelines."[58] The charging process that resulted from these closed investigations is the same process Ms. Chattah reportedly monitored in violation of her recusal.[59] Mr. Blundo now stands indicted, itself a prejudicial injury.[60] And the indictment carried a distinct, concrete injury of its own: it was returned two days before Nevada's candidate-filing deadline, which caused Mr. Blundo to forego running for office both this cycle and as long as this indictment is pending.[61] A federal felony prosecution revived after years of closed agency investigations through a reportedly tainted process and at the cost of a political candidacy is substantial prejudice.[62] And as *Young* explains, the alleged misconduct is structural in nature, not the type of injury subject to a harmless error inquiry.[63]

---

[57] July 31, 2023, Report, at US-17, Ex. C.

[58] September 27, 2024, Report, at US-13, Ex. E.

[59] Ex. A at 1, 4.

[60] *See Young*, 481 U.S. at 814 ("Even if a defendant is ultimately acquitted, forced immersion in criminal investigation and adjudication is a wrenching disruption of everyday life.").

[61] ECF No. 2; *see* NEV. SEC'Y OF STATE, *Filing for Non-Judicial Office*, https://perma.cc/N4YL-V922 (identifying a March 13, 2026 filing deadline).

[62] *See Chapman*, 524 F.3d at 1087.

[63] 481 U.S. at 802–09 (majority opinion).

**3. No lesser remedy addresses the reported misconduct.**

The final element asks whether any "lesser remedial action" would suffice.[64] On the reported record, the available lesser remedy failed. DOJ previously ordered Ms. Chattah recused; per the reporting, she violated the recusal.[65] Dismissal is the only appropriate remedy.

The Tenth Circuit's reasoning in *United States v. P.H.E., Inc.* fits these facts: "[w]here, as here, a prosecution is premised on the fruits of constitutionally tainted behavior, we cannot permit the prosecution to continue, notwithstanding attempts to launder the taint by presenting the fruits to an independent prosecutor."[66] Dismissal with prejudice is the remedy that addresses the reported misconduct and serves the supervisory power's deterrent purpose.[67]

**B. The same reported conduct independently warrants dismissal on due process grounds.**

For the same reasons, the reported conduct violates due-process principles and independently warrants dismissal. The categories of outrageous government conduct are not closed; each case turns on its own facts.[68] And the facts here are not the ordinary ones. The DOJ determined this prosecutor was barred from participating in this case. Yet, per the reporting, she participated anyway—repeatedly, over warnings, under a statute that treats willful violations as grounds for removal.[69] This "violates fundamental fairness"[70] and equally warrants dismissal.[71]

---

[64] *Chapman*, 524 F.3d at 1087.

[65] Ex. A at 1, 4; *see also* Ex. M at 4–5.

[66] 965 F.2d 848, 859 (10th Cir. 1992).

[67] *See Hasting*, 461 U.S. at 505; *Chapman*, 524 F.3d at 1085.

[68] *Black*, 733 F.3d at 302; *Bundy*, 968 F.3d at 1030.

[69] Ex. A at 1, 4; Ex. M at 4–5; 28 U.S.C. § 528.

[70] *Stinson*, 647 F.3d at 1209 (quotation omitted).

[71] *See, e.g.*, *Bundy*, 968 F.3d at 1030.

**C. Alternatively and at a minimum, the Court should order discovery and an evidentiary hearing.**

If the Court does not dismiss on the present record, it should order discovery and hold an evidentiary hearing. The companion motion specifies the documents sought—the recusal determination and related communications, the warnings, Ms. Chattah's communications about this case, the internal charging and declination memoranda, and the identities of DOJ personnel with knowledge. [72] This motion incorporates those discovery requests.

The requested discovery is independently necessary on the arguments advanced in this motion. The vindictiveness and selectivity claims concern why this case was charged.[73] This motion concerns whether a disqualified prosecutor participated in charging it or engaged in its prosecution. Every document that answers those questions sits in the government's files: the recusal memorandum, the warnings, and the communications showing what Ms. Chattah sought and received after her recusal.[74] Mr. Blundo has come forward with what a defendant can: detailed published reporting sourced to at least three people with direct knowledge of this matter, corroborated by this case's own record.[75] The government holds the rest. The Court should order it produced, and should then hear testimony, under oath, from Ms. Chattah and the DOJ personnel with knowledge of the reported violations.

## IV. CONCLUSION

Per reporting from three people with direct knowledge, the DOJ barred Sigal Chattah from this case, but she repeatedly involved herself in it anyway. This motion does not turn on

---

[72] *See* Vindictive & Selective Prosecution Motion at 34.

[73] *See id.* at 15–30.

[74] *Cf. United States v. Sellers*, 906 F.3d 848, 852–55 (9th Cir. 2018) (discovery standards must remain flexible where official records, not defendant-accessible facts, hold the answers).

[75] *See* Ex. A at 1, 4; Ex. M at 4–5; ECF No. 2 (indictment not bearing Ms. Chattah's name, unlike other indictments returned during her tenure).

why she did so. Whatever Ms. Chattah's motive, her reported involvement in this case is flagrant misbehavior that violates fundamental fairness. Absent a credible rebuttal of that reporting, this case should be dismissed with prejudice. At a minimum, the Court should order the requested discovery and hold an evidentiary hearing at which Ms. Chattah and those with knowledge of the reported violations testify.

Dated: August 24, 2026.

RENE L. VALLADARES
Federal Public Defender

By: */s/ Sean A. McClelland*

SEAN A. MCCLELLAND
Assistant Federal Public Defender

*/s/ Heidi Ojeda*

HEIDI OJEDA
Assistant Federal Public Defender