TODD BLANCHE
Attorney General of the United States
SIGAL CHATTAH
First Assistant United States Attorney
District of Nevada
Nevada Bar No. 8264
RICHARD ANTHONY LOPEZ
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Tel: (702) 388-6336
Fax: (702) 388-6418
tony.lopez@usdoj.gov
*Attorneys for the United States of America*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LEONARDO F. BLUNDO,<br><br>Defendant. | Case No. 2:26-cr-34-JAD-EJY<br><br>**Government's Consolidated Response to Defendant's Motions to Dismiss [ECF 17 and 18]**[1] |

## INTRODUCTION

Defendant Leonardo F. Blundo moves to dismiss the charges against him, claiming that (1) First Assistant United States Attorney Sigal Chattah revived a dead investigation to settle a personal grudge against him; and (2) Ms. Chattah improperly intervened in his case after she was recused from his investigation. Both motions rest on faulty premises and should be denied.

[1] Blundo's motions make numerous representations not discussed in this response. The government does not concede the accuracy of those representations, but believes they are immaterial to the Court's decision.

First, Blundo's motion to dismiss for vindictive and selective prosecution should fail. He falsely claims that "[f]or over four years, investigators and prosecutors repeatedly declined to prosecute" him. (ECF 17 at 3.) To the contrary, the discovery provided to Blundo's counsel, as well as contemporaneous documents attached as Exhibits to this response, completely and totally refute the lie that the Blundo investigation was ever closed. Even the primary exhibits on which Blundo relies undermine his claim, as they confirm that the FBI would continue the investigation. As demonstrated below, Blundo's motion blatantly disregards the truth despite overwhelming evidence disclosed in the discovery, which clearly demonstrates a continued investigation over the course of more than 20 months prior to Ms. Chattah's appointment.

In short, there is no basis in the record or reality for Blundo to claim that the investigation into his conduct had closed without charges, meaning that Ms. Chattah could not possibly have revived it because of alleged animus.

Second, Blundo's motion to dismiss for outrageous government conduct should likewise be denied. Ms. Chattah had no involvement in whether Blundo faced charges. She had no involvement in what charges Blundo faced. And she had no involvement in the USAO's approval of the indictment presented to the grand jury. Consistent with Department of Justice guidance, her limited involvement was to ensure that an important public corruption matter did not unnecessarily linger and run up against the statute of limitations. There was nothing improper or outrageous about that conduct.

This Court should deny both motions in full and allow this matter to proceed in ordinary course and the interests of justice. Moreover, no discovery or evidentiary hearing is necessary because the available documentation shows that Blundo was not vindictively or selectively prosecuted and Ms. Chattah's minimal involvement did not prejudice him.

## FACTUAL AND PROCEDURAL BACKGROUND

Between March 2020 and September 2021, Leonardo Blundo fraudulently obtained on behalf of his restaurant more than $500,000 of pandemic relief funds through the Paycheck Protection Program, Economic Injury Disaster Loan program, and the Restaurant Revitalization Fund. *See generally* ECF 2 (Indictment). He did so by inflating the restaurant's gross revenue, monthly payroll, and number of employees. *Id.* ¶ 31. At the time of this conduct, Blundo was an elected public official serving on the Nye County Commission.[2]

### A. Blundo's Own Exhibits Undermine His Claims

Blundo claims that "[t]he government's investigation here is over four years old and was repeatedly closed before Ms. Chattah took office," specifically alleging that the investigation into him was closed twice: once in July 2023 and again in September 2024. ECF 17 at 3-4.[3] But the exhibits he cites, and numerous other documents he did not provide to the Court, prove otherwise.

Blundo selectively quotes from two reports prepared by an agent from the Small Business Administration Office of Inspector General ("SBA-OIG") that SBA-OIG had closed out investigations into complaints about his SBA loans. ECF 17-4 (Defense Exhibit C) and ECF 17-6 (Defense Exhibit E).[4] But Blundo fails to acknowledge that both of those reports show that the investigation was still open. Exhibit C – the purported July 2023 closure – expressly notes that the assigned AUSA "had not yet confirmed if he would move forward on the PPP/EIDL loan fraud charges." ECF 17-4 at 3. Indeed, as shown below, he

---

[2] Blundo lost his bid for re-election in the 2022 primary held in June 2022. See https://www.nyecountynv.gov/DocumentCenter/View/41396/2022-Primary-Election-Results-PDF

[3] Blundo provides no explanation for how Ms. Chattah revived the investigation between its first purported closure in July 2023 and its second purported closure in September 2024.

[4] *See also* ECF 17-3 (Exhibit B, a summary of Exhibits C and E).

could not do so because there was still much investigating to be done. Exhibit E – the purported September 2024 closure – documents that the Blundo matter was a joint investigation with the FBI and that "[t]his investigation would be deferred to the FBI until further assistance is needed from SBA-OIG." ECF 17-6 at 3.[5]

**B. The Discovery Provided to the Defense and Other Documents Definitively Disprove Blundo's Claims.**

The FBI's continuous pursuit of this investigation is confirmed by the discovery provided to the defense. Blundo says the investigation into his loans was closed in July 2023, but the discovery shows it was just getting started. From August 2023 on, the FBI served at least 20 subpoenas and interviewed at least five witnesses, including Blundo, in furtherance of this investigation. *See* Appendix A (Table of Events Occurring After July 2023).[6] These are not the actions of an agency that has closed an investigation; they are the actions of an agency actively developing one.

Most notably, agents from the FBI and SBA-OIG attempted to interview Blundo on November 30, 2023. The FBI later served two separate subpoenas on Blundo's company that he used to run his restaurant, on in December 2023 and another in July 2024. The defense offers no explanation why the FBI would continue to put so much work into an investigation that was supposedly closed in July 2023.

---

[5] Although the government believes it is immaterial in light of the overwhelming documentary evidence that the Blundo investigation was never closed, a witness from SBA-OIG would be expected to testify at an evidentiary hearing that these closures were administrative in nature because of, among other things, the heavy agent workload caused by the pandemic relief programs and another agency's ability to lead the investigation, and therefore had nothing to do with the merits of the investigation.

[6] In fact, of the more than 10,000 pages of discovery provided to the defense, the vast majority were documenting actions taken or records received after the purported July 2023 closure. Because of the volume of documents related to the events in Appendix A, they are presented here in summary form.

Blundo's company did not finish producing documents until August 20, 2024, yet he argues the investigation into his conduct was again closed in September 2024. The contemporaneous record again proves this claim false. Indeed, what occurred next is particularly difficult to reconcile with the existence of a closed investigation.

On November 1, 2024, about a month after Blundo says the investigation was closed, an FBI Special Agent prepared a 60-page summary of her review of the documents provided in response to the subpoena issued to Blundo's company.[7] Again, it is hard to see why Blundo believes the FBI would put in the work to prepare such a report for a case closed in September 2024.

But additional FBI documentation[8] confirms without a doubt that at no point after September 2024 was this case closed. On January 7, 2025, the assigned AUSA emailed an FBI agent to inform her that "once he completed work on another case the next step in the [Blundo] investigation would be to review the evidence and meet with his supervisor regarding the approval of an indictment." (Gov't Exhibit 1.) On March 18, 2025, FBI agents and an FBI forensic accountant had a case coordination call where the assigned AUSA "advised that following a review of discovery, the investigative team would discuss next steps regarding a target letter." (Gov't Exhibit 2.) Three days later, an FBI agent delivered the discovery to the assigned AUSA. (Gov't Exhibit 3.) All of this preparation took place before Ms. Chattah assumed her position as Interim United States Attorney on April 1, 2025.[9]

---

[7] This report was provided to the defense at Bates number US-009065 to US-009124.

[8] These documents were not previously provided to the defense, as logistical matters such as when the FBI provided discovery to the USAO are rarely material.

[9] https://www.justice.gov/usao-nv/pr/sigal-chattah-appointed-interim-united-states-attorney-district-nevada

### C. The Decision to Charge Blundo Was Made Before Ms. Chattah Knew the Investigation Existed.

On May 19, 2025, the assigned AUSA sent a target letter to Blundo. In my capacity as a supervisor, I reviewed the target letter and approved its issuance. As is routine in criminal cases in the District of Nevada, this target letter was issued in the name of the United States Attorney, but was not reviewed or approved by Ms. Chattah.

As the name suggests, "[a] 'target' is a person as to whom the prosecutor or the grand jury has substantial evidence linking him or her to the commission of a crime and who, in the judgment of the prosecutor, is a putative defendant." Justice Manual 9-11.151. The USAO issues target letters to targets it intends to indict. When he received the target letter, Blundo was on notice of the high likelihood he would be indicted.

All of this occurred before Ms. Chattah was even aware of the USAO's investigation into Blundo. At some point in or around June 2025, Ms. Chattah reviewed a list of the USAO's investigations and cases for the purpose of identifying any matters to recuse herself from. (Chattah Decl. ¶ 3.) On June 24, 2025, Ms. Chattah requested that DOJ approve her recusal from the Blundo investigation because of their personal and professional relationship. *Id.* ¶ 4. On July 7, 2025, the Department of Justice approved the recusal of Ms. Chattah from the Blundo investigation. *Id.* ¶ 6.

After Ms. Chattah self-recused, she contacted the Executive Office of the United States Attorneys to ask whether she could ensure that recusal cases in the USAO did not unnecessarily linger or run into issues with the statute of limitations. *Id.* ¶ 7. She was informed that doing so was not an issue. *Id.*[10]

[10] I independently spoke with the career EOUSA employee with whom Ms. Chattah spoke and confirmed this is what she was told.

On July 31, 2025, the AUSA assigned to the Blundo investigation departed the USAO, noting for his successor that this case should be about ready to charge. I then took over as the AUSA assigned to this matter. I made the decision to present an indictment to the grand jury, but because of the large volume of responsibilities on my plate, I did not make any progress on moving the case forward. With the statute of limitations for the RRF grant application set to expire in May 2026, Ms. Chattah gave me a deadline to present my indictment to the grand jury.[11] Ms. Chattah had no involvement in whether to bring charges, that decision was mine. I drafted a proposed indictment and submitted it to the Criminal Chief for his review and approval. Ms. Chattah played no role in that approval process.

On March 11, 2026, a Federal Grand Jury returned an indictment charging Blundo with five counts of Wire Fraud in violation of 18 U.S.C. § 1343 and two counts of Money Laundering in violation of 18 U.S.C. § 1957.

## ARGUMENT

The Executive Branch has a responsibility to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. For this reason, certain prosecutorial decisions are considered within the "special province of the Executive [b]ranch." *Heckler v. Chaney*, 470 U.S. 821, 832 (1985). Within the Executive Branch, the U.S. Attorney's Office for each district is charged with "prosecut[ing] . . . all offenses against the United States." 28 U.S.C. § 547(1).

While the USAO enjoys "broad discretion" in making prosecutorial decisions, *United States v. Goodwin*, 457 U.S. 368, 382 (1982), that discretion is not "unfettered"; it remains

[11] I did not meet the initial deadline, but did present the indictment a few weeks later.

"subject to constitutional constraints." *United States v. Batchelder*, 442 U.S. 114, 125 (1979). But the decision to prosecute otherwise "rests entirely in [the USAO's] discretion," *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978), and that decision is supported by a "presumption of regularity," *United States v. Armstrong*, 517 U.S. 456, 464 (1996).

"[U]nder our system of separation of powers, the decision whether to prosecute, and the decision as to the charge to be filed, rests in the discretion of the Attorney General or his delegates, the United States Attorneys." *United States v. Edmonson*, 792 F.2d 1492, 1497 (9th Cir. 1986). The Executive Branch prosecutes offenses; the Judicial Branch adjudicates them. "[T]he decision to prosecute is particularly ill-suited to judicial review." *Wayte v. United States*, 470 U.S. 598, 607 (1985). Meanwhile, the Executive Branch is well equipped to assess an offense and "determine the extent of the societal interest in prosecution." *See Goodwin*, 457 U.S. at 382.

The societal interests in this prosecution are significant. Defendant is a former public official who fraudulently obtained more than $500,000 in pandemic-relief loans while in office. His prosecution implicates the societal interests of rooting out public corruption, protecting taxpayer funds from fraud, and deterring criminal actors from taking advantage of government programs designed to alleviate the harm of a global disaster.

Nonetheless, he asks the Court to take the extraordinary step of dismissing his indictment because he believes he is being vindictively and selectively prosecuted, and he believes the government has engaged in outrageous conduct. For the reasons below, the Court should deny those requests.

**A. The Government is Not Vindictively Prosecuting the Defendant.**

"A prosecutor violates due process when he seeks additional charges solely to punish a defendant for exercising a constitutional or statutory right." *United States v. Gamez-Orduno*,

235 F.3d 453, 462 (9th Cir. 2000) (citing *Bordenkircher*, 434 U.S. at 363). A defendant may establish vindictive prosecution (1) "by producing direct evidence of the prosecutor's punitive motivation, or (2) by showing that the circumstances establish a 'reasonable likelihood of vindictiveness,' thus giving rise to a presumption that the Government must in turn rebut." *United States v. Kent*, 649 F.3d 906, 912–13 (9th Cir. 2011). But "the appearance of vindictiveness results only where, as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or a punitive animus towards the defendant because he has exercised his specific legal rights." *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1169 (9th Cir. 1982).

**1. The defendant has not produced direct evidence of a vindictive motive.**

Blundo must first produce "direct evidence" of the prosecutor's vindictive motive. *Kent*, 649 F.3d at 914. He has produced no such evidence.

**a. The defendant has not even attempted to show direct evidence that the Assistant U.S. Attorneys responsible for the decision to charge him had an improper vindictive motive.**

To start, the vindictiveness inquiry focuses on the prosecutors "who made the charging decision." *United States v. DeTar*, 832 F.2d 1110, 1112 (9th Cir. 1987); *see also United States v. Gomez-Lopez*, 62 F.3d 304, 306 (9th Cir. 1995) (noting that the focus "is on the ultimate decision-maker"). Here, I proposed the Blundo investigation for indictment. The Criminal Chief at the time approved the indictment for presentation to the grand jury. Because of Ms. Chattah's recusal, the Executive Assistant United States Attorney is ultimately responsible for this case. Yet, Blundo presents no evidence that any of these prosecutors harbors animus against him.

Instead, he argues that Ms. Chattah's animus matters because "she was the line prosecutors' boss." ECF 17 at 23. But that is not the law, at least in the Ninth Circuit. *See DeTar*, 832 F.2d at 1112; *see also United States v. Gilbert*, 266 F.3d 1180, 1187 (9th Cir. 2001) ("In all but the most extreme cases, it is only the biases and motivations of the prosecutor that are relevant."); *United States v. Hooton*, 662 F.2d 628, 634 (9th Cir. 1981) (agent's alleged animus was irrelevant; defendant "failed to show even an appearance of vindictiveness on the part of those members of the United States Attorney's office who made the prosecutive decision").

As described above, the USAO decided to bring charges against Blundo – evidenced by the target letter he received – before Ms. Chattah was even aware of the investigation into his conduct. She had no involvement in whether charges were brought and what charges were brought. She had no role in the approval process, which followed the normal process.

**b. The defendant has not shown direct evidence that Ms. Chattah had an improper vindictive motive.**

Should the Court decide that it needs to consider Ms. Chattah's alleged animus, the defendant has not carried his burden to present "direct evidence" that she harbors animus in the relevant sense. Blundo primarily relies on a July 2023 motion brought to a vote at a meeting of the Nye County Republican Central Committee. (ECF 17-7, 17-8.) That motion sought to censure Ms. Chattah for bringing a lawsuit against a fellow Republican. *Id*. Blundo did not propose the motion and did not second the motion. (ECF 17-7.) The NCRCC tabled the motion to invite Ms. Chattah to appear at the next meeting to explain her position, which she did. *Id.* The motion to censure Ms. Chattah failed. (ECF 17-12 ¶ 7.)

Her recollection is that Blundo voted against the motion, that is, that he voted to not censure her. (Chattah Decl. ¶ 12; *see also* ECF 17-12 ¶ 8.)

As an initial matter, that Ms. Chattah would harbor animus toward Blundo for a censure motion that did not pass and that he did not support more than two years earlier is simply not credible.

But moreover, in the context of a vindictive-prosecution defense, "vindictiveness" has a specific meaning. It refers to prosecutorial action "whose objective is to penalize a person's reliance on his legal rights." *See Bordenkircher*, 434 U.S. at 363. "Prosecutorial vindictiveness" is a "term of art with a precise and limited meaning." *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987). It doesn't refer to "a prosecutor's personal spite or ill will toward an otherwise validly chargeable defendant." *United States v. Walker*, 514 F. Supp. 294, 311 (E.D. La. 1981); *see* Doug Lieb, *Vindicating Vindictiveness: Prosecutorial Discretion and Plea Bargaining, Past and Future*, 123 Yale L.J. 1014, 1017–1020 (2017) (describing the development of prosecutorial vindictiveness's "particularized" meaning).

Indeed, vindictiveness "could hardly be defined so broadly in a legal system that recognizes the legitimacy of retribution as a justification for punishment." *See Walker*, 514 F. Supp. at 311; *cf. People v. Trump Organization, Inc.*, No. 451685/2020, 2022 WL 489625, at *4 (N.Y. Sup. Ct. Feb. 17, 2022) ("As has often been said, that a prosecutor dislikes someone does not prevent a prosecution"). Instead, vindictiveness refers to something narrower: prosecutorial action "whose objective is to penalize a person's reliance on his legal rights." *Bordenkircher*, 434 U.S. at 363.

A vindictive-prosecution defense "typically, if not exclusively" applies in an even narrower context. *See United States v. Lazzaro*, 2022 WL 17417970, at *6 (D. Minn. Oct. 12, 2022), *report and recommendation adopted*, 2022 WL 16948157 (D. Minn. Nov. 15, 2022). It

does not "typically involve retaliation for the exercise of just *any* legal right." *Id.* Instead, it involves retaliation for asserting a right during the criminal proceeding itself or a subsequent criminal proceeding. *See United States v. Wilson*, 639 F.2d 500, 502 (9th Cir. 1981) ("Vindictive prosecution arises only where the government increases the severity of alleged charges in response to a defendant's exercise of constitutional rights."); *see also United States v. Raymer*, 941 F.2d 1031, 1040 (10th Cir. 1991) ("When a defendant exercises constitutional or statutory rights in the course of criminal proceedings, the government may not punish him for such exercise without violating due process guaranteed by the federal Constitution.").

Under this narrowed scope, for example, a defendant could show vindictiveness where a prosecutor brings more serious charges against a defendant solely because the defendant successfully exercised his right to appeal. *See Blackledge v. Perry*, 417 U.S. 21, 28–29 (1974). But a vindictive-prosecution defense grounded in the defendant's exercising a right outside the criminal proceeding—*e.g.*, exercising his First Amendment free speech rights before any prosecution begins—is "dubious at best." *See Lazzaro*, 2022 WL 17417970, at *5, *6; *cf. United States v. Woods*, 305 F. App'x 964, 966 (4th Cir. 2009) (recognizing that "most successful vindictive prosecution claims involve retaliatory prosecutions" occur after a defendant went to trial).

Still, even if the defense could apply to the exercise of pre-indictment rights, Blundo has not carried his burden. He has not produced any direct evidence that he is being prosecuted in retaliation for the exercise of First Amendment rights. In fact, all of the documentation discussed above, show the opposite: he is being prosecuted because of a thorough FBI investigation into his conduct.

**c. The defendant has not shown that the prosecution was brought solely to punish him for exercising his First Amendment rights.**

Even if the Court finds animus, the Court should still hold that Blundo is not being vindictively prosecuted because the record establishes that the prosecution was not brought solely to punish his exercise of First Amendment rights. To prove causation, the defendant must show that his charges "were brought solely to 'penalize'" him for exercising a protected right. *See Goodwin*, 457 U.S. at 380 n.12.

Blundo argues that the "timing further supports the irregularity here." ECF 17 at 22. To the contrary, it supports denying the motion. For one, Blundo's purported exercise of his legal rights occurred years ago. Meanwhile, the sequence of documented events show that the Blundo investigation preceded the exercise of those rights, continued after it, was never closed, was never declined, and reached the target letter stage where Blundo was considered a putative defendant before Ms. Chattah was ever aware of the investigation.

In an attempt to stir up suspicion where none belongs, in his brief, Blundo says that "on February 20, 2026, the office's career First Assistant United States Attorney and the career criminal chief were removed from the office." ECF 17 at 12. He later states that Ms. Chattah "'exorcised' the 'dead weight' career First Assistant and career criminal chief who constituted a natural internal check on the exercise of prosecutorial discretion in charging decisions with the USAO." *Id*. at 22.

These are blatant lies, and it is hard to see how the defense has any good faith basis to state them as fact in its Motion. Ms. Chattah did not ask these two career AUSAs to leave and would have preferred that they stay in their leadership positions. (Chattah Decl. ¶ 16.) However, they had already delayed their federal retirement to help the office transition

under Ms. Chattah's leadership, *id.*, and any claim they were removed because of Ms. Chattah is false and offensive.

At bottom, Blundo cannot show that his charges "were brought solely to 'penalize'" him. *See Goodwin*, 457 U.S. at 380 n.12. Typically, a defendant exercises a protected right during a criminal proceeding, the government then takes some prosecutorial action, and the court is left to assess whether the government's action could be justified as a "proper exercise of prosecutorial discretion." *Id*. Here, there is documentation confirming the justification of Blundo's charges, another basis on which to deny his motion.

**B. The Government Is Not Selectively Prosecuting the Defendant.**

A "presumption of regularity" underlies "prosecutorial decisions, and in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." *Armstrong*, 517 U.S. at 464. "In the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Id.* at 464; *see United States v. Steele*, 461 F.2d 1148, 1151 (9th Cir. 1972) ("Mere selectivity in prosecution creates no constitutional problem").

To assert a successful claim for selective prosecution, a defendant "must demonstrate that the federal prosecutorial policy had (1) a discriminatory effect and (2) that it was motivated by a discriminatory purpose." *Armstrong*, 517 U.S. at 465. Selective enforcement claims are governed by the same two-part test. *See United States v. Sellers*, 906 F.3d 848, 850 (9th Cir. 2018). To establish a discriminatory effect, a defendant must make "a credible showing of different treatment of similarly situated persons[.]" *Armstrong*, 517 U.S. at 470.

This means, the defendant "must show that similarly situated individuals . . . were not prosecuted." *United States v. Arenas-Ortiz*, 339 F.3d 1066, 1068 (9th Cir. 2003).

Even if a defendant shows a discriminatory effect, courts must still find that the government acted with a discriminatory purpose. To establish a discriminatory purpose, a defendant must show that "the decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Wayte*, 470 U.S. at 610. A defendant must demonstrate evidence of discriminatory motive: courts do not "impute discriminatory motives to [government actors] without any supporting evidence." *See Hispanic Taco Vendors of Wa. v. City of Pasco*, 994 F.2d 676 680 (9th Cir. 1993).

"The justifications for a rigorous standard for the elements of a selective-prosecution claim . . . require[s] a correspondingly rigorous standard for discovery in aid of such a claim." *Armstrong*, 517 U.S. at 468. Thus, to obtain discovery in furtherance of a selective prosecution claim, the defendant must "present some evidence tending to show the existence of the essential elements" of the claim. *Id.* at 470. When a defendant fails to make the "threshold showing . . . that the Government declined to prosecute similarly situated suspects" a defendant is not entitled to selective prosecution discovery." *Id.* The standard to obtain discovery is a "rigorous one designed to minimize interference with the prosecutorial function." *Arenas-Ortiz*, 339 F.3d at 1069.

Blundo has not produced the "clear evidence" required for dismissing an indictment based on selective prosecution. He has not even made the "credible showing" needed for discovery. He has not identified similarly situated individuals who were not prosecuted or provided evidence that the decision to prosecute him was made because of his protected activities.

**1. The defendant has not identified similarly situated individuals who were not prosecuted.**

"[T]o prove a discriminatory effect, 'the claimant must show that similarly situated individuals . . . were not prosecuted.'" *Lacey v. Maricopa County*, 693 F.3d 896, 920 (9th Cir. 2012) (quoting Armstrong, 517 U.S. at 465). "The standard for proving discriminatory effect 'is a demanding one.'" *Id.* "[I]t is necessary to identify a 'similarly situated' class against which the [complainant]'s class can be compared." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir.1995). "The point of the similarly situated analysis is to isolate the factor allegedly subject to impermissible discrimination." *United States v. Rundo*, 108 F.4th 792, 799 (9th Cir. 2024) (internal quotation marks omitted); *see also United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996) ("[D]efendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them.").

Blundo identifies 22 recipients of at least $150,000 in PPP loans that he claims are "similarly situated in all respects" to him. ECF 17 at 28. But they are not similarly situated. Unlike Blundo, none is alleged to have lied on their applications to obtain those funds. Unlike Blundo, none is alleged to have committed fraud with respect to three different pandemic-related programs. And to the government's knowledge, none of the applicants who obtained those loans for their businesses were elected officials entrusted by the public at the time they did so, unlike Blundo.

Blundo has not presented evidence that he has been treated differently from anyone else who fraudulently obtained pandemic-related funds, regardless of whether they had a political dispute with Ms. Chattah. That showing is an "absolute requirement." *Armstrong*, 517 U.S. at 467. And without it, he has not satisfied what is supposed to be a "demanding"

standard. *Lacey*, 693 F.3d at 920. The Court's analysis of the selective-prosecution claim should end here.

**2. The defendant has not shown discriminatory intent.**

Even if Blundo could show discriminatory effect, his claim would fail because he has not shown discriminatory intent. Here, Blundo relies on the same speculation disproven in the section above discussing vindictive prosecution. The case against him was never closed. It was initiated and investigated before Ms. Chattah became Interim United States Attorney. The assigned AUSA decided to issue a target letter to Blundo before Ms. Chattah ever knew about the investigation. I proposed the indictment against Blundo based on my own independent assessment of the evidence, and that indictment was approved by the Criminal Chief, all without input from Ms. Chattah on whether Blundo should face charges or what they should be.

**C. There Is No Outrageous Government Conduct Here.**

Dismissal for outrageous government conduct is "limited to extreme cases" in which the defendant can demonstrate that the government's conduct "violates fundamental fairness" and is "so grossly shocking and so outrageous as to violate the universal sense of justice." *United States v. Stinson*, 647 F.3d 1196, 1209 (9th Cir. 2011). This is an "extremely high standard." *United States v. Black*, 733 F.3d 294, 302 (9th Cir. 2013) (citations omitted) (finding that outrageous government conduct exists only in "that slim category of cases in which the police have been brutal, employing physical or psychological coercion against the defendant")). Even circumstances that are clearly improper do not necessarily rise to the level of outrageous misconduct. *See, e.g.*, *United States v. Nolan-Cooper*, 155 F.3d 221, 233 (3d Cir. 1998) (rejecting outrageous misconduct claim where an incident of sexual intercourse

occurred between a law enforcement officer and the defendant which "was not necessarily intertwined with [the defendant's] offense conduct").

As Blundo recognizes, "[o]utrageous-conduct claims often involve coercion or the government's role in creating the offense." ECF 18 at 9; *see also United States v. Haynes*, 216 F.3d 789, 797 (9th Cir. 2000) ("[T]he outrageous conduct defense is generally unavailable where the criminal enterprise was already in progress before the government became involved or where the defendant was involved in a continuing series of similar crimes during the government conduct at issue."). As a result, Blundo frames his request for dismissal as one made under the Court's supervisory powers or as a due process violation of fundamental fairness.

**1. Blundo fails all three elements required for dismissal under the Court's supervisory power.**

The Court must find three elements to dismiss an indictment under its supervisory powers: flagrant misbehavior, substantial prejudice, and no available lesser remedy. *United States v. Chapman*, 524 F.3d 1073, 1085, 1087 (9th Cir. 2008). "Dismissal of an indictment with prejudice necessarily implicates separation-of-powers principles. . . . Such dismissal exercised under the guise of 'supervisory power' is impermissible absent 'a clear basis in fact and law for doing so.'" *United States v. Isgro*, 974 F.2d 1091, 1097 (9th Cir. 1992).

**a. Blundo has not shown any misconduct**

"[B]ecause '[d]ismissing an indictment with prejudice encroaches on the prosecutor's charging authority,' this sanction may be permitted only 'in cases of flagrant prosecutorial misconduct.'" *Chapman*, 524 F.3d at 1085. "[M]erely negligent governmental conduct is insufficient to establish flagrant misbehavior." *Id.*; *see also United States v. Kearns*, 5 F.3d

1251, 1255 (9th Cir. 1993) (conduct that "may have been negligent, or even grossly negligent" did not warrant dismissal).

As discussed above, Blundo's allegations of misconduct suffer from a faulty premise. Ms. Chattah's minimal involvement in this matter was based on the information she received from the DOJ component that approved her self-recusal: that she was permitted to ensure that investigations did not languish and suffer from issues with the statute of limitations. (Chattah Decl. ¶ 8.)

Even if the Court concludes that she was not permitted to do so, there is nothing flagrant about her conduct. Blundo received the "disinterested prosecutor" he claims he seeks. Ms. Chattah had no say in whether Blundo faced indictment, no involvement in the approval of the indictment presented to the grand jury, and no input on what that indictment alleged.

**b. Blundo has demonstrated no prejudice**

Blundo's allegations of prejudice similarly fall short, as he reiterates arguments disproven above. He claims that that the investigation against him was closed until Ms. Chattah revived it. Not so. He says he would otherwise not have been indicted. Likewise, that is untrue.

Although Blundo further says he declined to run for office this election cycle because of the timing of the indictment (ECF 18 at 12), he submits absolutely no evidence in support of this claim. He does not say what office he would have run for, and what preparations he had made to do so. Tellingly, he does not explain why an indictment caused him not to run, but a target letter – and the very high likelihood of a future indictment that comes with it – was not a sufficient deterrent. And even if the indictment was the but-for cause of him not

seeking office, that was his choice to do so. There is no legal requirement that prevents him from running for office while facing criminal charges.

**c. Dismissal is not an appropriate remedy**

Finally, there is also a lesser remedy available to address Blundo's concerns. Ms. Chattah's limited involvement in this matter was permitted by the DOJ component that approved her self-recusal. If the Court has concerns about that authorization, it could order that Ms. Chattah refrain from any further involvement in this matter. Indeed, other than her assistance in responding to the allegations in Blundo's motions to dismiss, Ms. Chattah has had no involvement in the prosecution of this case since the return of the indictment.

**2. Blundo cannot show a "grossly shocking" Due Process violation**

Blundo conclusorily argues that Ms. Chattah's involvement in his investigation "violates fundamental fairness" of due process. ECF 18 at 13. For the reasons above, that is not true. Ms. Chattah did not revive a dead investigation against him. She had no knowledge of the investigation until the USAO had already sent him a target letter, putting him on notice that he was highly likely to be indicted. Blundo's spurious claim that she fired career AUSAs in leadership positions to overcome their objections to his prosecution are completely fabricated. Ultimately, Ms. Chattah had no impact on whether Blundo faced charges or what charges he faced and had no say in whether those charges were approved.

**3. Neither discovery nor an evidentiary hearing is needed.**

For good reason, when a defendant seeks discovery related to the process by which defendant was charged rather than the merits of the charge itself, the standard is a "rigorous one designed to minimize interference with the prosecutorial function." *Arenas-Ortiz*, 339 F.3d at 1069. This Court can decide these issues on the briefs based on the overwhelming documentation that the Blundo investigation was nothing but ordinary. It was never closed

only to be revived out of animus, as he claims. The reason he faces charges is not Ms. Chattah, but his misrepresentations on his applications to obtain more than $500,000 in pandemic relief funds.

## CONCLUSION

For the above reasons, the Court should deny Blundo's Motions to Dismiss in full without a hearing.

Respectfully submitted this 29th day of September, 2026.

TODD BLANCHE
Attorney General

*/s/ Richard Anthony Lopez*
RICHARD ANTHONY LOPEZ
Assistant United States Attorney

**APPENDIX A: TIMELINE OF EVENTS**

| Date | Event | Bates |
|---|---|---|
| July 2023 | Blundo claims the investigation was closed | N/A |
| 8.29.2023 | FBI serves subpoena on DETR | US-000778 |
| 9.7.2023 | SBA provides FBI with summary of Blundo SBA loans and grant noting "there is some good exposure here" | US-009859 |
| 9.19.2023 | FBI serves subpoena on payroll company | US-000929 |
| 9.20.2023 | FBI serves subpoena on Bank 1 | US-000938 |
| 9.20.2023 | FBI serves subpoena on Bank 2 | US-000949 |
| 9.20.2023 | FBI serves subpoena on Bank 3 | US-000960 |
| 9.20.2023 | FBI serves subpoena on investment company | US-000971 |
| 11.30.2023 | FBI and SBA-OIG attempt to interview Blundo | US-010261 |
| 12.14.2023 | FBI serves subpoena on Blundo's restaurant | US-001435 |
| 1.24.2024 | FBI serves subpoena on title company | US-001445 |
| 1.24.2024 | FBI serves subpoena on tax preparer | US-001453 |
| 2.3.2024 | Blundo's restaurant produces first set of documents | US-001469 |
| 3.8.2024 | FBI serves subpoena on Internet service provider | US-003759 |
| 3.20.2024 | Blundo's restaurant produces first set of documents | US-003775 |
| 4.10.2024 | FBI serves subpoena on Casino 1 | US-005825 |
| 4.17.2024 | FBI serves subpoena on Intuit | US-005844 |
| 4.10.2024 | FBI serves subpoena on Casino 2 | US-005853 |
| 4.22.2024 | FBI serves subpoena on Bookkeeper 1 | US-005950 |
| 4.22.2024 | FBI interviews bookkeeper | US-005950 |
| 5.2.2024 | FBI serves subpoena on Casino 3 | US-006032 |
| 5.6.2024 | FBI serves subpoena on Saddle West Hotel | US-006040 |
| 5.23.2024 | FBI serves subpoena on Bookkeeper 2 | US-006136 |
| 5.17.2024 | FBI interviews bookkeeper | US-008699 |
| 5.28.2024 | FBI serves subpoena on Bookkeeper 3 | US-008727 |
| 6.2.2024 | FBI interviews bookkeeper | US-008844 |
| 6.7.2024 | FBI interviews tax preparer | US-008877 |
| 7.14.2024 | FBI serves second subpoena on Blundo's restaurant | US-09000 |
| 8.20.2024 | Blundo's restaurant produces response to second subpoena | US-009033 |
| Sept 2024 | Blundo says the investigation was closed again | |
| 11.1.2024 | FBI prepares 60-page report summarizing documents received from Blundo's restaurant | US-009065 |
| 1.7.2025 | AUSA tells FBI he will work on the Blundo case next | N/A |
| 3.18.2025 | AUSA tells FBI he will review discovery and discuss next steps regarding a target letter | N/A |
| 3.21.2025 | FBI drops off discovery for AUSA review | N/A |
| 4.1.2025 | Sigal Chattah appointed as Interim United States Attorney | |

**Exhibit Index**

Exhibit 1 – FBI FD-1057 *Case Update* (Jan. 8, 2025)

Exhibit 2 – FBI FD-1057 *Case Coordination Call* (Mar. 18, 2025)

Exhibit 3 – FBI FD-1057 *Discovery to AUSA* (Mar. 26, 2025)