RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
SEAN A. MCCLELLAND
Assistant Federal Public Defender
Nevada State Bar No. 16581
HEIDI A. OJEDA
Assistant Federal Public Defender
Nevada State Bar No. 12223
200 South Virginia Street, Suite 340
Reno, Nevada 89501
(775) 321-8451
Sean_McClelland@fd.org
Heidi_Ojeda@fd.org

Attorneys for LEONARDO F. BLUNDO

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

LEONARDO F. BLUNDO,

Defendant.

Case No. 2:26-cr-00034-JAD-EJY

**REPLY IN SUPPORT OF MOTION TO DISMISS FOR VINDICTIVE AND SELECTIVE PROSECUTION OR, ALTERNATIVELY, FOR DISCOVERY**

[Evidentiary Hearing Requested]

## I. INTRODUCTION

> "Ms. Chattah gave me a deadline to present my indictment [against Mr. Blundo] to the grand jury."

Gov't Br. Opp. MTDs, ECF No. 27 at 7 (assigned AUSA, writing in the first person).

* * *

When Mr. Blundo moved to dismiss, the record showed that the Department of Justice (DOJ) had reportedly recused Sigal Chattah from this case. Ms. Chattah was then the interim

United States Attorney for this District, and she is Mr. Blundo's political rival.[1] The record also showed that she reportedly kept asking prosecutors about the case anyway.[2] And it showed that her office then indicted him on pandemic-relief fraud charges after years without charging him.[3]

The government's response confirms each of those facts. Ms. Chattah now swears that DOJ approved her recusal on July 7, 2025, and that she "occasionally requested status updates" on the case afterward.[4] And the government discloses, for the first time, that after her recusal Ms. Chattah gave the prosecutor handling the case a "deadline to present [this] indictment to the grand jury."[5]

Those facts further support dismissal. Mr. Blundo showed Ms. Chattah's animus and a prosecution that followed it. The deadline connects the two. And that connection raises a presumption that this prosecution is vindictive, which the government must rebut. The rest of the government's account rests on two things: the unsworn, first-person narrative of the assigned AUSA and records the government never produced in discovery.[6] Neither rebuts the presumption. And the government's legal positions misstate the law of vindictive and selective prosecution. Under the governing law, the facts here warrant dismissal—or, at a minimum, discovery and an evidentiary hearing.[7]

---

[1] ECF No. 17 at 1–3, 19–25.

[2] *Id.*

[3] *Id.*

[4] Declaration of Sigal Chattah ¶¶ 6, 8, ECF No. 27-4 ("Chattah Decl.").

[5] ECF No. 27 at 7 & n.11.

[6] ECF No. 27 at 5 n.8, 6–7 & nn.10–11, 9.

[7] Mr. Blundo is contemporaneously filing a reply in support of his motion to dismiss for outrageous government conduct, ECF No. 18, and incorporates it by reference.

## II. ARGUMENT[8]

### A. New revelations from the government's response strengthen Mr. Blundo's case for relief.

In its response, the government discloses facts the defense did not have when moving to dismiss, and each helps Mr. Blundo. The rest of the response leaves the animus evidence standing and rests on unsworn statements. Per the government, Ms. Chattah took office on April 1, 2025, and learned of this case in June 2025.[9] Against that timeline, the government now reveals that:

- after DOJ had recused her, Ms. Chattah "gave [the assigned AUSA] a deadline to present [his] indictment to the grand jury," on a date the government does not give; he missed it and presented the indictment "a few weeks later";[10]
- the former AUSA who originally oversaw this case left the office on July 31, 2025, "noting for his successor that this case should be about ready to charge";[11]
- from then until Ms. Chattah set her deadline, the case did not move forward: the assigned AUSA, who "took over" after the former AUSA left, "did not make any progress on moving the case forward" "because of the large volume of responsibilities on [his] plate";[12] and
- Ms. Chattah is still involved in this case: the response lists her as counsel for the United States, her declaration is signed "First Assistant United

---

[8] The government's legal argument is recycled, often word for word, from its response brief in the James Comey prosecution—down to a citation error. *Compare, e.g.*, ECF No. 27 at 8, 11–12, 14, *with United States v. Comey*, No. 1:25-cr-272, ECF No. 138 at 22–23, 28–29, 34 (E.D. Va. Nov. 3, 2025). In both filings, the government dates Doug Lieb's 2014 student note to 2017. ECF No. 27 at 11; *Comey*, ECF No. 138 at 29.

The *Comey* court dismissed on another ground without reaching the vindictive-prosecution arguments. *See United States v. Comey*, 810 F. Supp. 3d 768 (E.D. Va. 2025), *appeal docketed*, No. 25-4674 (4th Cir. Dec. 22, 2025).

[9] Chattah Decl. ¶¶ 1, 3.

[10] ECF No. 27 at 7 & n.11; Chattah Decl. ¶ 6.

[11] ECF No. 27 at 7.

[12] *Id.* at 7.

> States Attorney," and the government acknowledges her "assistance in responding to the allegations in Blundo's motions to dismiss."[13]

These facts establish the connection between Ms. Chattah's animus and the charge against Mr. Blundo. The motion showed the animus and her involvement after the recusal, followed by the indictment.[14] And the government's own account now shows that the case made no progress from July 2025 until Ms. Chattah set a deadline to indict Mr. Blundo.[15] The grand jury returned the indictment on March 11, 2026—more than eight months after the recusal, and two days before Nevada's candidate-filing deadline. Because of that indictment, Mr. Blundo did not run for office this cycle.[16]

So the sequence the motion described—Ms. Chattah encouraging the indictment of her political rival despite her recusal—now comes from the government itself. That sequence is evidence that the charge would not have been brought but for Ms. Chattah's involvement. And that showing raises a presumption of vindictiveness the government must rebut (as discussed below).

The government tries to answer all that with two inconsistent accounts of how this charge came about. One purports to leave Ms. Chattah out: per the government, a May 2025 target letter shows the office decided to charge Mr. Blundo then, before Ms. Chattah knew of the case.[17] The other account names Ms. Chattah specifically: she set a deadline to indict because a grant application's limitations period would run in May 2026.[18] On that account, her

---

[13] ECF No. 27 at 1, 20; Chattah Decl. at 3.

[14] ECF No. 17 at 19–24.

[15] ECF No. 27 at 7 & n.11.

[16] ECF No. 2; Chattah Decl. ¶ 6; ECF No. 17 at 14 & n.65.

[17] ECF No. 27 at 6, 10; Chattah Decl. ¶¶ 2–3.

[18] ECF No. 27 at 7; *see id.* at 2.

deadline produced the March 2026 indictment, which came "a few weeks" after it.[19] So, on the government's own description of the events here, the May 2025 decision does not explain when Mr. Blundo was charged. Ms. Chattah's deadline does.

The government's target-letter account fails on the government's own records, which reveal no indictment decision until after Ms. Chattah took office.[20] In January 2025, the former AUSA's "next step" was only "to review the evidence and meet with his supervisor regarding the approval of an indictment."[21] In March, the team planned to review the discovery and then "discuss next steps regarding a target letter."[22] The former AUSA received that discovery only days before Ms. Chattah took office.[23] And indeed, the government itself seems to acknowledge that no indictment decision had been made (or even could have been) by then—calling all of these steps mere "preparation."[24] The target letter then went out on May 19, 2025, "in the name of the United States Attorney"—Ms. Chattah.[25] Yet she swears she "was unaware of the target letter."[26] Whether she was is a question for the evidentiary hearing. But even if she was unaware of the target letter, a target letter charges no one; the indictment—here produced after Ms. Chattah set a deadline for it—does (as discussed below).

On the government's own account, the statute of limitations gave little reason to hurry. For its part, the government names just one limitations date: May 2026, for the Restaurant

[19] ECF No. 27 at 7 & n.11; ECF No. 2.

[20] *Contra* ECF No. 27 at 6, 10.

[21] ECF No. 27-1 at 2.

[22] ECF No. 27-2 at 2.

[23] ECF No. 27-3 at 2; Chattah Decl. ¶ 1.

[24] ECF No. 27 at 5.

[25] *Id.* at 6.

[26] Chattah Decl. ¶ 2.

Revitalization Fund grant.[27] That date applies to only one count of the seven brought against Mr. Blundo.[28] The government gives no date for the other six. And on the government's theory, the four pandemic-loan counts had until 2030 or 2031.[29] The indictment came about two months before that May 2026 date, and two days before Nevada's candidate-filing deadline.[30] Of those two deadlines, only the filing deadline was close.

The government's purported limitations explanation also raises the question of how Ms. Chattah knew the May 2026 limitations date at all. On the government's account, she set her deadline because of the limitations date for one grant application.[31] To do that, she had to know that the case involved that grant and when Mr. Blundo applied for that grant. Yet she swears she received no "substantive briefings" and "did not review any of the evidence."[32] And—perhaps even stronger given the government's purported reliance on the limitations issue—Ms. Chattah's declaration does not address the deadline she set or the May 2026 limitations date the government claims she was aware of.[33]

So either Ms. Chattah tracked the substance of her rival's case despite her recusal, or the limitations reason was never her justification for pushing for Mr. Blundo's indictment.[34]

---

[27] ECF No. 27 at 7.

[28] ECF No. 2; ECF No. 27 at 7 (five wire-fraud counts and two money-laundering counts).

[29] *See* ECF No. 27 at 3 (Paycheck Protection Program and Economic Injury Disaster Loan program); 15 U.S.C. § 636(a)(36)(W), (a)(37)(P), (b)(16) (10-year limitations periods for fraud involving Paycheck Protection Program loans and COVID-19 economic injury disaster loans); ECF No. 2.

[30] ECF No. 2; ECF No. 17 at 14 & n.65.

[31] ECF No. 27 at 7.

[32] Chattah Decl. ¶¶ 9–10.

[33] *See generally* Chattah Decl.

[34] Chattah Decl. ¶¶ 6, 8; ECF No. 27 at 7.

Either scenario supports the animus issue here. If she was tracking the case that closely, then she violated a recusal order to involve herself in a case against her political rival. If she was unaware of the limitations issue (despite the government's claim otherwise), the only reason the government gives for her deadline falls away. Either way, what remains is her animus toward Mr. Blundo, and an indictment two days before the candidate-filing deadline.

The government's response also fails to refute Mr. Blundo's evidence of animus. In 2023, the Nye County Republican Party, which Mr. Blundo chairs, took up a resolution to censure Ms. Chattah, and he declined to block it.[35] Two witnesses swore to what Ms. Chattah said afterward. Melissa Blundo, Mr. Blundo's former wife, swore that Ms. Chattah called him an "asshole" she "cannot stand" who "better watch out" because "he does not know who he is fucking with."[36] And Troy La Mana, who sponsored the censure resolution, swore that Ms. Chattah was "extremely angry" that the county party "would even entertain" it.[37] Ms. Chattah's declaration responds to Ms. Blundo's account with one sentence—"I did not make those statements"—and does not mention Mr. La Mana at all.[38] So Mr. La Mana's account stands uncontested, and Ms. Blundo's stands against a denial that only live testimony can resolve.

Much of the rest of the government's account rests on words no witness has sworn to. Ms. Chattah swears to her recusal, her status requests, and a call to the Executive Office for United States Attorneys (EOUSA) about keeping recused cases from lingering. But her sworn

---

[35] ECF No. 17 at 1–2, 7–9; ECF No. 27 at 10–11.

[36] Ex. K ¶¶ 8, 10; *see* ECF No. 17 at 19–20.

[37] Ex. L ¶¶ 9, 11; *see* ECF No. 17 at 19–20.

[38] Chattah Decl. ¶ 15; *compare* ECF No. 17 at 20 (relying on Ex. L ¶¶ 9, 11), *with* ECF No. 27 at 10–11, *and* Chattah Decl. ¶¶ 12–16 (not mentioning Mr. La Mana or Ex. L). The declaration adds that Mr. Blundo did not bring the censure motion, that Ms. Chattah believes he voted against it, and that he later celebrated her appointment and texted her support. Chattah Decl. ¶¶ 12–14. None of that contradicts the sworn accounts. At most, these paragraphs raise a question of credibility, which a hearing resolves.

account of that call names no one and gives no date. Of the answer, she says only that she "was informed that doing so was not an issue."[39] The government offers no record of the call and no declaration from the person she spoke with. Everything else appears only in the assigned AUSA's first-person narrative, or at most in general terms in the declaration: who approved the target letter, who decided to indict, the deadline, the criminal chief's approval, and the assigned AUSA's own conversation with the EOUSA employee whom Ms. Chattah called.[40]

A brief is not evidence for the party that files it, and the government did not put those facts under oath.[41] And the records the government offers for its account of the 2025 events were never produced; the government says such "logistical matters" are "rarely material."[42] So the facts that decide this motion are disputed, and the records that would resolve them are in the government's possession. That calls for discovery and an evidentiary hearing (as discussed below).

---

[39] Chattah Decl. ¶ 7.

[40] Chattah Decl. ¶ 7; ECF No. 27 at 6 & n.10, 7 & n.11, 9. The declaration attributes the charging decision to the assigned AUSA "in conjunction with the approval of the Criminal Chief," naming no one and giving no date, and it does not mention the deadline. Chattah Decl. ¶¶ 7–11.

[41] *Brit. Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) ("legal memoranda and oral argument are not evidence"); *accord Turner v. United States*, 875 F. Supp. 1430, 1433 (D. Nev. 1995) (same). And a party's failure to produce witnesses "peculiarly within his power" "creates the presumption that the testimony, if produced, would be unfavorable." *Graves v. United States*, 150 U.S. 118, 121 (1893). The government's own statements (like the deadline admission), by contrast, can be held against it now. *See* FED. R. EVID. 801(d)(2)(A); *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir. 1988) ("[S]tatements of fact contained in a brief may be considered admissions of the party" (emphasis omitted)). Whether the assigned AUSA may remain counsel while serving as the witness to these facts is addressed in Mr. Blundo's contemporaneously filed reply in support of his outrageous-conduct motion. *See* NEV. R. PROF'L CONDUCT 3.7(a); LR IA 11-7.

[42] ECF No. 27 at 5 n.8. The government has still not formally produced these items in discovery. The defense has received no discovery of any kind since August 24, 2026.

At core, though, the government's new allegations make clear relief is warranted here. On the government's own account, Ms. Chattah set a deadline for prosecuting her political rival after DOJ had recused her. That warrants dismissal or, at a minimum, discovery and an evidentiary hearing.

**B. Mr. Blundo has raised a presumption of vindictiveness, and the government has not rebutted it.**

The deadline completes the vindictiveness showing Mr. Blundo made in his motion. Vindictiveness is shown by direct evidence of a punitive motive, or by circumstances establishing a "reasonable likelihood" of vindictiveness. The second route works in two steps: the defendant raises a presumption of vindictiveness, and the government must then rebut it.[43]

Mr. Blundo's protected activity is political: he chairs the Nye County Republican Party, he has clashed with Ms. Chattah over the party's direction, and he declined to block the party's resolution to censure her—all activity the First Amendment protects.[44] Ms. Chattah has documented animus toward Mr. Blundo; indeed, her own agency barred her from this case. Yet she involved herself in it and set a deadline to indict him. And Mr. Blundo now stands indicted. That sequence is evidence of a punitive motive. At a minimum, it raises the presumption of one.[45] So Mr. Blundo has raised the presumption. The burden thus shifts to the government: it must rebut the presumption with objective evidence. The government has not done so.

The government offers five responses that all fail. Three go to whether Mr. Blundo has raised the presumption, and two go to whether the government has rebutted it.[46]

---

[43] ECF No. 17 at 17–25; *United States v. Jenkins*, 504 F.3d 694, 699–700 (9th Cir. 2007).

[44] ECF No. 17 at 1–2, 17–20; *see Hartman v. Moore*, 547 U.S. 250, 256 (2006).

[45] ECF No. 17 at 19–21 (animus), 20–21 (recusal), 21–23 (involvement), 23–25 (presumption).

[46] The government does not say which step of the analysis each argument addresses. *See* ECF No. 27 at 8–14. Mr. Blundo takes them up in this order because that is where each logically fits.

**1. Mr. Blundo has raised the presumption.**

The government's first three responses go to whether Mr. Blundo has raised the presumption, and none is persuasive:

- First, per the government, there is no direct evidence of vindictiveness because it is "simply not credible" that Ms. Chattah would harbor animus over a censure motion "more than two years earlier."[47] The government also calls vindictiveness a "term of art" reaching only rights asserted in a criminal case, which in the government's view makes a claim built on political activity "dubious at best."[48]
- Second, the government asserts that only the motives of the prosecutors "who made the charging decision" count, and that those prosecutors "decided to bring charges" before Ms. Chattah knew of the case.[49]
- Third, the government claims that Mr. Blundo must show his charges "were brought solely to 'penalize'" him.[50]

*First*, the government's animus argument gets both the facts and the law wrong.[51] As to the facts, most of Mr. Blundo's animus evidence stands uncontested.[52] That evidence includes public reporting and two sworn declarations tying Ms. Chattah's animus to the censure fight.[53] The rest stands against a bare denial that only live testimony can test (as discussed above).

---

[47] ECF No. 27 at 10–12.

[48] *Id.*

[49] *Id.* at 9–10.

[50] *Id.* at 13 (citing *United States v. Goodwin*, 457 U.S. 368, 380 n.12 (1982)).

[51] *Contra* ECF No. 27 at 10–12.

[52] *Contra id.* at 11.

[53] *See generally* ECF No. 17 at 3–15 & nn.6–71; *see also, e.g.*, Ex. A; Ex. K; Ex. L; Ex. M. Nor did the animus end with the censure fight "more than two years earlier." *Contra* ECF No. 27 at 11. Ms. Blundo swore that Ms. Chattah's "expressed animosity towards Leo has continued since then," including a later call urging her to leave him. Ex. K ¶ 10. And Ms. Chattah tweeted about Mr. Blundo's indictment despite her recusal. Ex. M at 6.

As to the law, the government's term-of-art point misreads Ninth Circuit law.[54] As the government acknowledges, *Bordenkircher* defines vindictiveness as action "whose objective is to penalize a person's reliance on his legal rights."[55] That describes this claim. Mr. Blundo engaged in protected political activity. Ms. Chattah's hostility followed. And on the government's own account, she then set a deadline to indict him despite her recusal.

Nor are vindictive-prosecution claims limited to rights asserted in a criminal case.[56] The government's contrary suggestion—that a claim grounded in pre-case political activity is "dubious at best"—rests on an unpublished, out-of-circuit magistrate judge's recommendation.[57] But the law in this circuit is not as "narrow[]" as the government says.[58] The cases that define vindictiveness, including *Gallegos-Curiel*, speak of the defendant's exercise of legal rights without limiting when and where the right is exercised.[59] And in *Hooton*, *Gilbert*, and *DeTar*, each cited by the government, the claim rested on dealings with an agency *outside* any criminal case. The Ninth Circuit did not hold those claims outside the doctrine; it decided each on its evidence.[60] And that especially justifies relief where (as here) the protected

---

[54] *Contra* ECF No. 27 at 11–12.

[55] *Id.* at 11 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)); ECF No. 17 at 17–20; *see also Goodwin*, 457 U.S. at 372 ("To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'").

[56] *Contra* ECF No. 27 at 12.

[57] ECF No. 27 at 12 (quoting *United States v. Lazzaro*, No. 21-cr-173, 2022 WL 17417970, at *5, *6 (D. Minn. Oct. 12, 2022), *report and recommendation adopted*, 2022 WL 16948157 (D. Minn. Nov. 15, 2022)).

[58] *Contra* ECF No. 27 at 11–12.

[59] ECF No. 27 at 9 (quoting *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1169 (9th Cir. 1982) ("his specific legal rights")); *see also United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987) ("the defendant's prior exercise of constitutional or statutory rights").

[60] *United States v. Hooton*, 662 F.2d 628, 633–34 (9th Cir. 1981) (protected activity was filing civil suits against an ATF agent with "no charging authority"; decided after an evidentiary hearing); *United States v. Gilbert*, 266 F.3d 1180, 1187 (9th Cir. 2001) (protected activity was

conduct is political speech: the Constitution "prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out."[61]

Moreover, even if the government's term-of-art objection mattered (as discussed, it is not the law), it would not apply to Mr. Blundo's standalone argument that a prosecution brought to gratify an official's personal animus violates due process.[62] That argument does not depend on the vindictiveness label: such a prosecution is the "arbitrary action of government" that due process forbids.[63] In short: Ms. Chattah's animus counts, whether the claim is called vindictiveness or due process.

*Second*, Ms. Chattah's animus is part of the vindictiveness inquiry because she took part in the charging process.[64] She headed the prosecuting office; she was not an outside agency. In each of the government's cases, by contrast, the hostile actor was outside the prosecuting office.

---

filing civil suit against the IRS; rejected on the evidence because no evidence of control over charging decisions); *United States v. DeTar*, 832 F.2d 1110, 1112 (9th Cir. 1987) (protected activity was conflict with the IRS; rejected on the merits); *see* ECF No. 27 at 9–10.

*Hooton* also emphasizes that "the mere filing of an indictment can support a charge of vindictive prosecution." 662 F.2d at 634. And *Jenkins* affirmed a pretrial dismissal where the protected activity took place in a different proceeding. 504 F.3d at 699–702. Courts elsewhere have applied the doctrine to charges that followed a discrimination suit and a civil challenge to the defendant's removal. *See United States v. Adams*, 870 F.2d 1140, 1141–46 (6th Cir. 1989) (vacating conviction and remanding for discovery and an evidentiary hearing on vindictiveness where protected activity was filing a discrimination suit); *United States v. Abrego Garcia*, 833 F. Supp. 3d 811, 836 (M.D. Tenn. 2026) (civil challenge to the defendant's removal), *appeal docketed*, No. 26-5555 (6th Cir. June 24, 2026).

[61] *Hartman*, 547 U.S. at 256.

[62] ECF No. 17 at 17–18, 20.

[63] *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) ("The touchstone of due process is protection of the individual against arbitrary action of government." (quotation omitted)). Against that theory, the government offers only a *cf.* citation to a New York state trial court. ECF No. 27 at 11 (citing *People v. Trump Org., Inc.*, No. 451685/2020, 2022 WL 489625, at *4 (N.Y. Sup. Ct. Feb. 17, 2022)).

[64] *Contra* ECF No. 27 at 9–10.

And one of them, *Hooton*, was decided only after an evidentiary hearing—the step the government asks the Court to skip here.[65]

Ms. Chattah's role makes her firmly part of the vindictiveness inquiry. A vindictive-prosecution claim lies where the line prosecutor was "prevailed upon" by another to bring charges.[66] And a court considers "the conduct of the government as a whole."[67] A deadline to indict, set for a line prosecutor by the recused head of his office, is that kind of pressure.[68] Indeed, as at least one court has emphasized, "the motivations of the people who place the file on the prosecutor's desk"—like Ms. Chattah's deadline here—"are highly relevant when considering a motion to dismiss for vindictive prosecution."[69]

---

[65] *Hooton*, 662 F.2d at 633–34; *Gilbert*, 266 F.3d at 1187; *DeTar*, 832 F.2d at 1112; *United States v. Gomez-Lopez*, 62 F.3d 304, 306 (9th Cir. 1995); *see also United States v. Dickerson*, 975 F.2d 1245, 1251 (7th Cir. 1992) (declining to impute the animus of FBI agents and state police officers, who "are not and have no control over federal prosecutors"). *Contra* ECF No. 27 at 9–10.

[66] *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000); *United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999); *United States v. Monsoor*, 77 F.3d 1031, 1034–35 (7th Cir. 1996); *Adams*, 870 F.2d at 1145–46; *cf. United States v. Hastings*, 126 F.3d 310, 314 (4th Cir. 1997) (declining to "impute the unlawful biases of the investigating agents to the persons ultimately responsible for the prosecution").

[67] *Meyer*, 810 F.2d at 1248; *see Thigpen v. Roberts*, 468 U.S. 27, 31 (1984). The government does not address *Thigpen*, *Meyer*, *Sanders*, or *Monsoor*—despite the defense citing each in its opening motion. *Compare* ECF No. 17 at 23 & nn.111–12 (raising all these cases), *with* ECF No. 27 at 9–12 (government not addressing them).

[68] *Abrego Garcia*, 833 F. Supp. 3d at 830 (finding that a senior Justice Department official prevailed on the prosecutors through the "chain of command"); *United States v. Abrego Garcia*, 802 F. Supp. 3d 1055, 1063–64 (M.D. Tenn. 2025) ("Even assuming the individual motive of Acting U.S. Attorney McGuire was pure, others' motives, like fruit from a poisonous tree, may taint this prosecution.").

[69] *United States v. Abrego Garcia*, 807 F. Supp. 3d 827, 830 (M.D. Tenn. 2025) (citing *Adams*, 870 F.2d at 1146).

The government's own proposed test reaches her too. The government says the inquiry focuses on "the ultimate decision-maker."[70] And on its own account, Ms. Chattah set the timetable. She gave the assigned AUSA a deadline to present the indictment, and he presented it a few weeks after that deadline passed.[71] So on the government's own view of the law, Ms. Chattah was a decision-maker on the timing of the charge. Such a deadline from the head of the office is the sort of decision-making courts look for to impute another official's animus.[72]

Nor does the May 2025 target letter, which the government erroneously treats as the charging decision, remove Ms. Chattah's animus from the inquiry. The operative inquiry looks at the decision to bring the charge, and here the charge came by indictment.[73] Formal proceedings, such as an indictment, mark the point at which "the government has committed itself to prosecute."[74] A target letter is not the same sort of decision. For one, it comes before any indictment. A target is a "putative defendant."[75] And the Justice Manual encourages prosecutors, in appropriate cases, to notify a target "a reasonable time before seeking an indictment."[76] That was so here; the May 2025 letter specifically identified that the case might resolve "short of a Federal Indictment."[77] And even after a charge is filed, "the prosecutor's

---

[70] ECF No. 27 at 9 (quoting *Gomez-Lopez*, 62 F.3d at 306).

[71] *Id.* at 7 & n.11.

[72] *Cf. United States v. Wilson*, 262 F.3d 305, 316 (4th Cir. 2001) (declining to impute another U.S. Attorney's animus where nothing showed that the charging U.S. Attorney "was required to act on the request or felt any compulsion to act for any reason other than the duty to prosecute cases in the public interest").

[73] FED. R. CRIM. P. 7(a)(1) (a felony "must be prosecuted by an indictment").

[74] *United States v. Gouveia*, 467 U.S. 180, 189 (1984) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689–90 (1972) (plurality opinion)) (Sixth Amendment context).

[75] U.S. Dep't of Justice, JUSTICE MANUAL § 9-11.151 (*quoted at* ECF No. 27 at 6).

[76] JUSTICE MANUAL § 9-11.153; *see id.* § 9-11.155 (providing for notice that an investigation "has been discontinued without an indictment being returned").

[77] Ex. J (ECF No. 17-11).

assessment of the proper extent of prosecution may not have crystallized," and "[a]n initial decision should not freeze future conduct."[78] In short, the May 2025 target letter was not a decision to charge Mr. Blundo.

The government's own account confirms that the decision to indict came after DOJ recused Ms. Chattah. Strangely, the government's response's heading purports to claim the opposite: "The Decision to Charge Blundo Was Made Before Ms. Chattah Knew the Investigation Existed."[79] But the details of the government's story reveal that was not so. On the assigned AUSA's own account, he "took over" the case after the former AUSA left on July 31, 2025. Only after that did he "ma[k]e the decision to present an indictment to the grand jury."[80] And by the date he took over—July 31—Ms. Chattah had learned of the case and DOJ had recused her.[81] Yet she set the deadline to indict Mr. Blundo anyway.[82] Then, after Ms. Chattah set that deadline, the assigned AUSA charged Mr. Blundo.[83]

The bottom line: by the time the assigned AUSA presented the indictment, Ms. Chattah knew about the case, had been ordered recused, had participated anyway, and had specifically set a deadline for Mr. Blundo's indictment. So Ms. Chattah's animus is part of the inquiry.

---

[78] *Goodwin*, 457 U.S. at 381–82.

[79] ECF No. 27 at 6.

[80] *Id.* at 7.

[81] ECF No. 27 at 7; Chattah Decl. ¶¶ 3, 6.

[82] ECF No. 27 at 7.

[83] ECF No. 27 at 6–7 & n.11; Chattah Decl. ¶¶ 3, 6.

*Third*, the causation standard is but-for cause, not sole cause.[84] The government's own brief quotes the Ninth Circuit's but-for test four pages earlier:[85]

| **The government says (ECF No. 27 at 13)** | **Its own authority says (ECF No. 27 at 9, quoting *Gallegos-Curiel*)** |
|---|---|
| A defendant "must show that his charges 'were brought solely to "penalize"' him for exercising a protected right." | The appearance of vindictiveness turns on "a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or a punitive animus towards the defendant because he has exercised his specific legal rights." |

The government takes its "solely" framing from *Goodwin*'s footnote 12. But that footnote describes what the record in *Bordenkircher* failed to show; it does not state the test a defendant must meet.[86] Given that, the Ninth Circuit still applies the but-for test. In *Gallegos-Curiel*, decided a month after *Goodwin*, it quoted *Goodwin* but still stated the test in but-for terms.[87] And the Ninth Circuit restated the but-for test again in *Jenkins*.[88] All that forecloses the government's argument.

Under the correct but-for test, a defendant need not exclude all other motivations. "Often, events have multiple but-for causes."[89] "[F]or example, if a car accident occurred *both* because the defendant ran a red light *and* because the plaintiff failed to signal his turn at the

---

[84] *Contra* ECF No. 27 at 13 (government claiming that, "[t]o prove causation, the defendant must show that his charges 'were brought solely to "penalize"' him for exercising a protected right." (quoting *Goodwin*, 457 U.S. at 380 n.12)).

[85] *Compare* ECF No. 27 at 13 (citing *Goodwin*, 457 U.S. at 380 n.12), *with id.* at 9 (quoting *Gallegos-Curiel*, 681 F.2d at 1169).

[86] *See Goodwin*, 457 U.S. at 380 n.12.

[87] *Gallegos-Curiel*, 681 F.2d at 1169 (quoting the rule statement in *Goodwin*, 457 U.S. at 380 n.11). *Goodwin* was decided on June 18, 1982, and *Gallegos-Curiel* on July 21, 1982.

[88] *Jenkins*, 504 F.3d at 699.

[89] *Bostock v. Clayton Cnty.*, 590 U.S. 644, 656 (2020).

intersection, we might call each a but-for cause of the collision."[90] And that means that a party "cannot avoid liability just by citing some *other* factor that contributed to its challenged [] decision."[91] So the defense need not rule out any "*other*" purportedly innocuous reason for charging Mr. Blundo—as long as the animus was at least one of the causes, the standard is satisfied.[92]

Further, the presumption is available even though this charge came before trial.[93] *Goodwin* held only that a pretrial charging decision did not, on the record before it, raise the presumption by itself. But the presumption can arise before trial when a defendant shows more than a charge that follows protected activity: "[W]hen additional facts combine with this sequence of events to create such a realistic likelihood, a presumption will lie in the pretrial context."[94] The Ninth Circuit has affirmed a pretrial dismissal on the presumption.[95]

---

[90] *Id.* (emphases in original).

[91] *Id.* (emphasis in original).

[92] *Id.* (emphasis in original); *see also, e.g.*, *Abrego Garcia*, 802 F. Supp. 3d at 1063–64. Similar considerations defeat the government's argument that the investigation "continued after" Mr. Blundo's protected activity. An ongoing investigation does not show what brought the charges. On the government's own account, the case reached indictment only after Ms. Chattah set a deadline (as discussed above). ECF No. 27 at 13; *id.* at 7 & n.11.

[93] *Contra* ECF No. 27 at 12, 14.

[94] *Meyer*, 810 F.2d at 1246; *see Goodwin*, 457 U.S. at 381–82; FED. R. CRIM. P. 12(b)(3)(A)(iv) (requiring a claim of "selective or vindictive prosecution" to be raised by pretrial motion).

[95] *Jenkins*, 504 F.3d at 699–702 (affirming pretrial dismissal because "the government's conduct created the appearance of vindictiveness").

The "additional facts" here concern the recusal violations and the deadline.[96] And the government does not argue otherwise: it recites the presumption standard and then argues only that Mr. Blundo lacks direct evidence.[97] So the presumption of vindictiveness arises here.

**2. The government has not rebutted the presumption.**

The government's last two responses go to whether it has rebutted the presumption, and neither is persuasive:

- Fourth, the government says that "there is documentation confirming the justification of Blundo's charges."[98]
- Fifth, the government says the motion's account of the case's history is false. Per the government, the investigation, which the motion showed was twice closed before Ms. Chattah arrived, "was never closed," so she "could not possibly have revived it."[99] And (says the government) the career First Assistant United States Attorney (FAUSA) and career criminal chief, who the motion said were removed in February 2026, retired, so the motion's statements are "blatant lies."[100]

*Fourth*, the investigative files and the unsworn narrative the government offers do not rebut the presumption. Once the presumption attaches, the government must prove that the charges "did not stem from a vindictive motive, or [were] justified by independent reasons or intervening circumstances that dispel the appearance of vindictiveness."[101]

---

[96] *Meyer*, 810 F.2d at 1246.

[97] *Compare* ECF No. 17 at 24–25, *with* ECF No. 27 at 9–14 (stating the standard at 9, then arguing under the heading "The defendant has not produced direct evidence of a vindictive motive").

[98] *Id.* at 14; *see id.* at 12.

[99] ECF No. 27 at 2, 13–14, 17; Chattah Decl. ¶ 16.

[100] *Id.*

[101] *Jenkins*, 504 F.3d at 699 (quoting *Gallegos-Curiel*, 681 F.2d at 1168); ECF No. 17 at 18, 24–25.

Rebuttal requires "objective, on-the-record explanations" of the charge, not an official's after-the-fact account of his own good faith.[102] The government cites subpoenas, interviews, and a plan to seek indictment approval "once [the former AUSA] completed work on another case."[103] But that documentation just shows an investigation, not why the indictment came in March 2026. The government's own reason for that timing is Ms. Chattah's deadline (as discussed above).[104] And even documentation that supported the charges would not rebut the presumption. A defendant's guilt "is not at issue on a vindictive prosecution motion," and the presumption must be rebutted with objective evidence "regardless of whether the defendant actually committed the underlying offense."[105] Indeed, even a defendant who pleaded guilty can still obtain relief for vindictive prosecution.[106] And the facts the government's rebuttal turns on here appear in no sworn statement (as discussed above). So the presumption stands unrebutted.

*Fifth*, the government's disputes about the investigative closures and the supervisors' departures rebut nothing, and they misread the motion.[107] The government does not dispute, for

---

[102] *United States v. Andrews*, 633 F.2d 449, 456 (6th Cir. 1980) (en banc) ("[O]nly objective, on-the-record explanations can suffice to rebut a finding of realistic likelihood of vindictiveness."); *see Jenkins*, 504 F.3d at 701–02 ("The presumption of vindictiveness . . . must be overcome by 'objective evidence justifying the prosecutor's action.'" (quoting *Goodwin*, 457 U.S. at 376 n.8)); *United States v. LaDeau*, 734 F.3d 561, 569–72 (6th Cir. 2013) (rejecting post hoc rationales in a government affidavit); *Abrego Garcia*, 833 F. Supp. 3d at 834–35 (similar; rejecting post hoc rationales sworn to by various involved prosecutors).

[103] ECF No. 27 App. A; ECF No. 27-1 at 2.

[104] ECF No. 27 at 7 & n.11.

[105] *Abrego Garcia*, 833 F. Supp. 3d at 835 (citing *United States v. Carey*, 816 F. Supp. 3d 129, 142 (D.D.C. 2026); *Blackledge v. Perry*, 417 U.S. 21, 23, 27–29 (1974); and *United States v. Zakhari*, 85 F.4th 367, 379 (6th Cir. 2023)).

[106] *See Blackledge*, 417 U.S. at 30–31 (granting relief to a defendant who had pleaded guilty).

[107] *Contra* ECF No. 27 at 2, 13–14, 17.

instance, the crux of the investigative-closures point: that the Small Business Administration's Office of Inspector General (SBA-OIG) closed its case in July 2023 for "[l]acking prosecutorial interest."[108] Nor does it dispute that SBA-OIG closed the case again in September 2024 as outside "SBA-OIG guidelines"; the second report reads "Case closed."[109] The government nonetheless insists that the FBI kept working the case. But Mr. Blundo never said otherwise. He just identified that SBA-OIG—the agency that opened the case—closed it twice before Ms. Chattah took office, the first time for lack of "prosecutorial interest."[110]

The departures dispute also rebuts nothing. Mr. Blundo pointed to the February 2026 departures of the career FAUSA and career criminal chief because the two career supervisors were a check on charging decisions.[111] And his account of them is no "blatant lie[]": in May 2026, Ms. Chattah wrote that it took her "a grueling year to exorcise the District of Nevada" and "[d]ead weight be gone."[112] The government disputes neither the February 20, 2026,

---

[108] Ex. C at US-17 (ECF No. 17-4).

[109] Ex. E at US-13 (ECF No. 17-6); *see* ECF No. 17 at 3–4. The government itself calls them "these closures." ECF No. 27 at 4 n.5.

[110] ECF No. 17 at 3–4. The defense also specifically identified that, after the first closure, investigators took other steps, including sending Mr. Blundo a subpoena (which he responded to). ECF No. 17 at 4 & Ex. D. The defense then identified that the investigation was closed again in September 2024. *Id.* The government's Appendix does not identify any investigative steps (just the preparation of a "summar[y]") taken after that second closure. *See* ECF No. 27 at 22.

[111] ECF No. 17 at 12, 22.

[112] *Compare* ECF No. 27 at 13 (government claiming "[t]hese are blatant lies, and it is hard to see how the defense has any good faith basis to state them as fact in its Motion"), *with* ECF No. 17 at 13 (quoting Sigal Chattah (@Chattah4Nevada), X (May 31, 2026, at 8:54 p.m.), https://perma.cc/3VAS-BJA3 ("Lord knows it took me a grueling year to exorcise the District of Nevada. Dead weight be gone. [emoji] The best reset the DOJ has seen in decades.")).

departures nor their timing—less than a month before Mr. Blundo was indicted.[113] Whether (and why) Ms. Chattah removed the two supervisors is a question for the evidentiary hearing.

Ultimately, though, not much turns on these disputes—not least because other evidence proves an aberrant charging decision here. At bottom, the government's own exhibits show no decision to charge before Ms. Chattah took office. And on its own account, the case reached the grand jury only after she set a deadline for indicting Mr. Blundo.[114] Those facts raise the presumption, and the disputes do not rebut it.

* * *

Ms. Chattah's animus followed Mr. Blundo's protected activity. On the government's own account, she then set the deadline for his indictment while recused. Nothing in the record rebuts the presumption that sequence raises. So this prosecution is vindictive. That warrants dismissal.

### C. This prosecution is also selective, and the government's responses do not show otherwise.

Ms. Chattah's animus also makes this prosecution unconstitutionally selective. A selective-prosecution claim has two elements. The discriminatory-effect element requires a showing that similarly situated people were not prosecuted. And the discriminatory-purpose element asks whether the decisionmaker acted "at least in part because of" the protected activity.[115] A defendant may proceed as a class of one, singled out from others similarly

---

[113] ECF No. 27 at 13; Chattah Decl. ¶ 16; ECF No. 17 at 12, 22 & n.104; ECF No. 2. The government cites paragraph 16 for Ms. Chattah's not asking the two "to leave" and preferring "that they stay," but paragraph 16 says neither. *Compare* ECF No. 27 at 13, *with* Chattah Decl. ¶ 16.

[114] ECF No. 17 at 3–4 (citing Ex. B at US-22); ECF No. 27 App. A; ECF No. 27-1 at 2; ECF No. 27-2 at 2; Chattah Decl. ¶ 1; ECF No. 27 at 7 & n.11.

[115] ECF No. 17 at 25–29; *United States v. Armstrong*, 517 U.S. 456, 465, 470 (1996); *Wayte v. United States*, 470 U.S. 598, 608, 610 (1985).

situated.[116] And discovery requires less than dismissal: "some evidence tending to show the existence of the essential elements."[117]

Mr. Blundo has satisfied these requirements. He was singled out from three groups: (1) the 22 businesses in Pahrump, his hometown, that received Paycheck Protection Program (PPP) loans over $150,000; (2) a national pool in which prosecutions are a fraction of a percent of suspected fraud; and (3) Nye County, which has seen no other pandemic-relief prosecution. And he was singled out by an office whose head holds documented animus toward him.[118] That is presumptive if not dispositive proof of selective prosecution here.

The government offers three responses, and none is persuasive:

- First, per the government, the Pahrump borrowers are not similarly situated because "none is alleged to have lied on their applications," none is alleged to have defrauded "three different pandemic-related programs," and, "to the government's knowledge," none "were elected officials entrusted by the public" at the time;[119]
- Second, the government asserts that this comparator showing is an "absolute requirement," and that *Sellers* holds that selective-enforcement claims (challenges to whom agents investigate and arrest, not whom prosecutors charge) "are governed by the same two-part test";[120] and

---

[116] *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *United States v. Torquato*, 602 F.2d 564, 568–69 & n.9 (3d Cir. 1979) (selective-prosecution claim lies for "personal or political bias"); ECF No. 17 at 25 & n.124.

[117] *Armstrong*, 517 U.S. at 468–70; *United States v. Arenas-Ortiz*, 339 F.3d 1066, 1068 (9th Cir. 2003).

[118] ECF No. 17 at 26–29.

[119] ECF No. 27 at 16.

[120] ECF No. 27 at 14, 16 (citing *Armstrong*, 517 U.S. at 467, and *United States v. Sellers*, 906 F.3d 848, 850 (9th Cir. 2018)).

- Third, the government says there is no discriminatory intent because the case "was never closed" and the assigned AUSA proposed the indictment on his "own independent assessment of the evidence."[121]

*First*, two of the government's three distinctions improperly define the comparison class by the charge itself. No other Pahrump borrower "is alleged" to have lied or to have defrauded three programs.[122] That is because the government has charged none of them. Under those two distinctions, no uncharged borrower could ever be similarly situated to a charged one. Mr. Blundo instead compared himself with borrowers the Small Business Administration itself suspected of fraud. The agency referred 562,000 suspected fraudulent loans to Treasury in April 2026. Pandemic-loan fraud indictments nationwide numbered about 1,180 from March 2020 through September 2023.[123] Suspected fraud far exceeds prosecution, so the comparison class is the borrowers the agency suspected, not the few the government chose to charge.

The government's third distinction—public office—names Mr. Blundo's political life as what separates him from the other borrowers. That is the factor the defense says this prosecution turned on. But that is the whole point: the similarly situated comparison isolates that factor. Without the two charge-based distinctions, the only thing separating Mr. Blundo from the other borrowers is "the factor allegedly subject to impermissible discrimination."[124] And the government does not address the class-of-one theory, the 562,000 referrals, the absence of any other Nye County prosecution, or *Torquato*, which recognized a selective-prosecution

---

[121] ECF No. 27 at 17.

[122] *Id.* at 16.

[123] ECF No. 17 at 27–28.

[124] *United States v. Rundo*, 108 F.4th 792, 799 (9th Cir. 2024) (internal quotation marks omitted), *quoted at* ECF No. 27 at 16; *see* ECF No. 17 at 24, 26.

claim for "personal or political bias."[125] So the only comparator evidence before the Court is Mr. Blundo's, and it shows discriminatory effect.

*Second*, the comparator "absolute requirement" the government invokes is one Mr. Blundo meets. *Armstrong* used that phrase in rejecting an argument that a defendant need not show that similarly situated people went unprosecuted.[126] Yet for discovery—the relief Mr. Blundo seeks in the alternative—*Armstrong* requires only a credible showing:

| **The government says** | **What *Armstrong* requires for discovery** |
|---|---|
| The comparator showing "is an 'absolute requirement.' *Armstrong*, 517 U.S. at 467." ECF No. 27 at 16. | The "required threshold" is "a credible showing of different treatment of similarly situated persons." 517 U.S. at 470 (*quoted at* ECF No. 27 at 14). Discovery requires "some evidence tending to show the existence of the essential elements of the defense." *Id.* at 468 (quotation omitted). |

As discussed above, Mr. Blundo's data make at least that showing: there is a range of comparators who were not prosecuted here. And even if the data did not satisfy *Armstrong*, *Sellers* supports a lower threshold. That case holds that, in stash-house sting cases, discovery on a selective-enforcement claim is "governed by a less rigorous standard than" *Armstrong*'s, and that "a defendant need not proffer evidence that similarly-situated individuals . . . were not investigated or arrested to receive discovery."[127] The same rule should govern discovery into a charging decision because the records showing how the government chose Mr. Blundo are in the government's possession. But whatever the applicable standard, Mr. Blundo has adduced

---

[125] *Compare* ECF No. 17 at 25 & n.124, 27–29, *with* ECF No. 27 at 14–17. The government cites *Steele* only for "[m]ere selectivity in prosecution creates no constitutional problem," never for its statement that enforcement focused on vocal offenders is "inherently suspect." *United States v. Steele*, 461 F.2d 1148, 1151–52 (9th Cir. 1972), *quoted at* ECF No. 27 at 14; *see* ECF No. 17 at 26 & n.131.

[126] *Armstrong*, 517 U.S. at 467.

[127] *Sellers*, 906 F.3d at 852–55; *see* ECF No. 17 at 16 n.74, 34.

sufficient comparators here. So the government's legal objection to the comparator showing fails.

*Third*, the government's purpose argument rests on the claim (addressed above) that the charging decision began with the May 2025 target letter and ended with the assigned AUSA's "independent" proposal. But the charge came by indictment, (1) after Ms. Chattah's recusal; and (2) after Ms. Chattah violated that recusal by setting a deadline to indict Mr. Blundo. Purpose asks whether political activity was a reason for the decision "at least in part."[128] An account that begins with a target letter and ends with a subordinate's proposal says nothing about Ms. Chattah. She headed the office and set the deadline (as discussed above). And the assigned AUSA's "independent assessment" claim is unsworn—and in tension with Ms. Chattah's deadline besides. Indeed, on the assigned AUSA's own account, he made no progress until her deadline. So the evidence of discriminatory purpose stands.

Nor does it help the government that the indictment's approval process allegedly "followed the normal process."[129] That is for a simple reason: a recused office head setting an indictment deadline is not normal.[130] Nor is a recused official's participation without a written determination.[131] Nor is the departure of the office's two career supervisors less than a month before the indictment.[132] Nor is a recused official's help in answering Mr. Blundo's motions.[133] Nor is an indictment returned two days before Nevada's candidate-filing deadline.[134] These

---

[128] *Wayte*, 470 U.S. at 610.

[129] ECF No. 27 at 10.

[130] *See* 28 C.F.R. § 45.2(a); Chattah Decl. ¶ 6; ECF No. 27 at 7 & n.11.

[131] *See* 28 U.S.C. § 528; 28 C.F.R. § 45.2(b); Chattah Decl. ¶ 7.

[132] ECF No. 17 at 12, 22; ECF No. 27 at 13; Chattah Decl. ¶ 16.

[133] ECF No. 27 at 1, 20; Chattah Decl. at 3.

[134] ECF No. 2; ECF No. 17 at 14 & n.65. DOJ policy bars timing a charge "for the purpose of affecting any election." And "[a]ny action likely to raise an issue or the perception

sorts of "[d]epartures from the normal procedural sequence" suggest "that improper purposes are playing a role."[135] That is the situation here.

In brief, Mr. Blundo has shown discriminatory effect: the record shows no other pandemic-relief prosecution in Nye County, and the government offers no comparator of its own. And he has shown discriminatory purpose: Ms. Chattah's animus. So this prosecution is selective. That warrants dismissal.

**D. The indictment should be dismissed with prejudice.**

Both constitutional violations call for dismissal with prejudice, and the government offers no argument for dismissing without it. Dismissal with prejudice is the ordinary result for vindictive or selective prosecution, and dismissal without prejudice would invite the government to re-indict.[136] Re-indictment would let the same office bring the same charges before the next candidate-filing deadline and keep Mr. Blundo from running again. So only dismissal with prejudice will suffice here.

For its part, the government offers just one lesser remedy: an order that Ms. Chattah "refrain from any further involvement in this matter." Mr. Blundo addresses that proposal more fully in his reply on his outrageous-conduct motion.[137] But in short: DOJ already recused Ms. Chattah from this case in July 2025, and she stayed involved anyway—up to setting a deadline

---

of an issue under this provision requires consultation with the Public Integrity Section." JUSTICE MANUAL § 9-85.500. The government does not say anyone consulted the Public Integrity Section. *See generally* ECF No. 27.

[135] *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977); *see* ECF No. 17 at 21 & n.100.

[136] ECF No. 17 at 30–32 & n.148 (citing *Jenkins*, 504 F.3d at 702); *compare id.* at 31–32, *with* ECF No. 27 at 8–17, 20–21 (not addressing dismissal without prejudice).

[137] ECF No. 27 at 20; *see* Mr. Blundo's contemporaneously filed reply in support of ECF No. 18.

for indicting Mr. Blundo.[138] Recusal has, in brief, been tried and failed. Accordingly, the Court should dismiss with prejudice.

**E. At a minimum, the Court should order discovery and hold an evidentiary hearing.**

If the Court does not dismiss on the present record, Mr. Blundo has at least made the threshold showings for discovery and a hearing. On vindictiveness, objective evidence raising a "reasonable likelihood" entitles a defendant to factual development. On selective prosecution, discovery requires only "some evidence tending to show the existence" of discriminatory effect and intent.[139] On this score, the government offers two responses, neither persuasive:

- First, the government says the Court "can decide these issues on the briefs based on the overwhelming documentation";[140] and
- Second, per the government, the standard for discovery into the charging process is "a rigorous one designed to minimize interference with the prosecutorial function."[141]

*First*, the government's own submission puts significant facts in conflict, and the documentation it cites does not resolve them. The government's documentation records investigative steps, not a decision to charge (as discussed above). And even beyond the animus dispute, it leaves each of the following in conflict:

---

[138] Chattah Decl. ¶¶ 6, 8; ECF No. 27 at 7 & n.11, 20.

[139] ECF No. 17 at 32–34 (citing *Jenkins*, 504 F.3d at 700, and quoting *Armstrong*, 517 U.S. at 468–69).

[140] ECF No. 27 at 20; *see id.* at 2.

[141] ECF No. 27 at 20 (quoting *Arenas-Ortiz*, 339 F.3d at 1069).

| The record and reporting | The government says | What resolves it |
|---|---|---|
| A press report citing three people familiar with the matter: Ms. Chattah "repeatedly sought status updates from prosecutors" on this matter "despite a DOJ recusal." Ex. A at 4. | Ms. Chattah "occasionally requested status updates" but received no "substantive briefings."[142] Chattah Decl. ¶¶ 8–9. | Her communications about the case, and testimony from the prosecutors who received them. |
| SBA-OIG closed its case for "Lacking prosecutorial interest," then closed it again as outside "SBA-OIG guidelines." Ex. C at US-17; Ex. E at US-13. | An SBA-OIG witness "would be expected to testify . . . that these closures were administrative in nature." ECF No. 27 at 4 n.5. | That witness, at the hearing the government itself contemplates. |
| Under the FBI records, any charging decision was to follow a review of the discovery, which the former AUSA received on March 21, 2025—11 days before Ms. Chattah took office. ECF No. 27-1 at 2; ECF No. 27-2 at 2; ECF No. 27-3 at 2; Chattah Decl. ¶ 1. The target letter went out May 19. ECF No. 27 at 6. The indictment came more than 11 months after she took office. ECF No. 2. | The charging decision came before Ms. Chattah "Knew the Investigation Existed." ECF No. 27 at 6, 10. She "was unaware of the target letter." Chattah Decl. ¶ 2. | The former AUSA, the assigned AUSA, and the criminal chief who approved the indictment; also the former AUSA's file. |

[142] Ms. Chattah does not explain how a "status update[]" could be non-"substantive." *See* Chattah Decl. ¶¶ 8–9. *Cf. Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019) (courts are "not required to exhibit a naiveté from which ordinary citizens are free" (quoting *United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir. 1977))).

| The record and reporting | The government says | What resolves it |
| --- | --- | --- |
| The career FAUSA and criminal chief left in February 2026, and Ms. Chattah wrote in May 2026 that it took her "a grueling year to exorcise the District of Nevada." ECF No. 17 at 12–13. | They retired; she "did not 'remove'" them. Chattah Decl. ¶ 16. | The former FAUSA and criminal chief. |

The government also relies on documents it never produced (and calls immaterial) to show that "at no point after September 2024 was this case closed."[143] By offering those records to defeat the motion, the government has put its own decision-making at issue. So the conflicts in this table call for discovery and an evidentiary hearing.

*Second*, the "rigorous" standard the government quotes from *Arenas-Ortiz* governs only discovery on a selective-prosecution claim under *Armstrong*.[144] It does not govern factual development on a vindictiveness claim. On such a claim (independently raised here), objective evidence of a "reasonable likelihood" of vindictiveness is enough.[145] And even on the selectivity front, Mr. Blundo's showing clears *Armstrong*'s discovery threshold for the reasons given above. So neither government response defeats the request for discovery and a hearing.

At the evidentiary hearing, the Court should hear from at least Ms. Chattah, the assigned AUSA, the EOUSA employee, the former AUSA assigned to the case, the SBA-OIG witness, the former FAUSA, and the former career criminal chief. Before the hearing, the Court should order the government to produce, in addition to the materials requested in the motion:[146]

---

143 ECF Nos. 27-1, 27-2, 27-3; ECF No. 27 at 5 & n.8. The government's footnote declining to "concede the accuracy" of the defense's "numerous representations" disputes none of them: it names no representation and cites no contrary fact. *Id.* at 1 n.1.

144 *Arenas-Ortiz*, 339 F.3d at 1068–69; *Armstrong*, 517 U.S. at 468–70.

145 *Jenkins*, 504 F.3d at 700; ECF No. 17 at 32 & n.162.

146 ECF No. 17 at 34 (identifying other pertinent requests).

- the communication by which Ms. Chattah set the indictment deadline, with its date, form, and recipients;
- any record of Ms. Chattah's call to EOUSA and of the assigned AUSA's later conversation with the same employee, including the employee's name, the dates, and any writing;
- any written determination under 28 C.F.R. § 45.2(b) permitting her participation in this matter, or a statement that none exists;
- the memorandum from the Deputy Attorney General's office that CBS News reported ordered her recusal in six cases, including this one;
- the record of the indictment's approval, including its date, which will show whether it came before or after the February 20, 2026, departures, and the identity of the criminal chief and any Executive Assistant United States Attorney who approved it; and
- documents sufficient to identify every person who participated in preparing the government's response and declaration.

## III. CONCLUSION

The government's response confirms Ms. Chattah's recusal and requests for "status updates," and it reveals for the first time that Ms. Chattah set the deadline for this indictment. Those facts raise at least a presumption of vindictiveness that is not rebutted by the government's response. With Mr. Blundo's comparator data, they also show selective prosecution. As a result, the Court should dismiss the indictment with prejudice or, at a minimum, order discovery and an evidentiary hearing.

Dated: October 13, 2026.

RENE L. VALLADARES
Federal Public Defender

By: */s/ Sean A. McClelland*

SEAN A. MCCLELLAND
Assistant Federal Public Defender

*/s/ Heidi Ojeda*

HEIDI A. OJEDA
Assistant Federal Public Defender