RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
SEAN A. MCCLELLAND
Assistant Federal Public Defender
Nevada State Bar No. 16581
HEIDI A. OJEDA
Assistant Federal Public Defender
Nevada State Bar No. 12223
200 South Virginia Street, Suite 340
Reno, Nevada 89501
(775) 321-8451
Sean_McClelland@fd.org
Heidi_Ojeda@fd.org

Attorneys for LEONARDO F. BLUNDO

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

LEONARDO F. BLUNDO,

Defendant.

Case No. 2:26-cr-00034-JAD-EJY

**REPLY IN SUPPORT OF MOTION TO DISMISS FOR OUTRAGEOUS GOVERNMENT CONDUCT OR, ALTERNATIVELY, FOR DISCOVERY**

[Evidentiary Hearing Requested]

## I. INTRODUCTION

While this case was under investigation, Attorney Sigal Chattah was the interim United States Attorney for this District, and she is Mr. Blundo's political rival. Mr. Blundo showed

that, if press reports are accurate, she kept involving herself in this case after the Department of Justice (DOJ) recused her from it.[1] That recusal violation, he showed, would warrant dismissal.[2]

Ms. Chattah's declaration now confirms the core of that reporting under oath. She swears that DOJ approved her recusal on July 7, 2025, and that she "occasionally requested status updates" on the case afterward. And the government adds a fact no report had: after her recusal, Ms. Chattah gave the prosecutor handling the case a deadline to present this indictment to the grand jury.[3]

The government's response strengthens the case for dismissal in three ways:

- First, the only permission the government offers for Ms. Chattah's participation is an oral answer from an unnamed employee of the Executive Office for United States Attorneys (EOUSA). The government does not say when that answer was given, and the employee has not sworn to it. Even if it was given, that answer could not authorize Ms. Chattah's participation. The recusal regulation, 28 C.F.R. § 45.2, requires a written determination by her supervisor before a recused employee takes part in a case. Yet there is no evidence of that here.
- Second, much of the government's account rests on statements no one has sworn to: a first-person narrative, written into the response itself, by the assigned AUSA. By relying on facts only the assigned AUSA can vouch for, the government makes him a witness. Those facts are unsworn, so they are not evidence and do not rebut Mr. Blundo's showing.
- Third, Ms. Chattah is still working on this case: the government lists her as counsel for the United States on the response that defends her conduct.

---

[1] ECF No. 18 at 1–3, 9–13.

[2] *Id.*

[3] Declaration of Sigal Chattah ¶¶ 6, 8, ECF No. 27-4 ("Chattah Decl."); ECF No. 27 at 7 & n.11.

Nothing in the government's response cures the violations here. The Court should dismiss the indictment with prejudice. At a minimum, it should order discovery on the recusal and hold an evidentiary hearing.[4]

## II. ARGUMENT

### A. New revelations from the government's response strengthen Mr. Blundo's case for relief.

In his opening motion, Mr. Blundo showed that, if the press reports are accurate, dismissal is warranted.[5] The government's own account now confirms the central parts of that reporting and adds new facts. Together, Ms. Chattah's declaration and the assigned AUSA's first-person narrative concede that:

- Ms. Chattah sought recusal because she "was familiar with Blundo personally and professionally," and DOJ approved the recusal on July 7, 2025;[6]
- she "occasionally requested status updates" on the case afterward;[7]
- she "gave [the assigned AUSA] a deadline to present [his] indictment to the grand jury," and he presented the indictment "a few weeks" later;[8]
- the only authority the government identifies for Ms. Chattah's involvement is an oral answer from someone at EOUSA, whom the government does not name, on a date it does not give. When she asked whether she could "ensure that recusal cases in [her] office did not unnecessarily linger or run into issues with the statute of limitations," she "was informed that doing so was not an issue";[9] and
- Ms. Chattah remains involved in this case: the response lists her among the "Attorneys for the United States of America," her declaration is signed "First Assistant United States Attorney," and the government

---

[4] Mr. Blundo is contemporaneously filing a reply in support of his motion to dismiss for vindictive and selective prosecution, ECF No. 17, and incorporates it by reference.

[5] ECF No. 18 at 3, 9–13.

[6] Chattah Decl. ¶¶ 4–6.

[7] *Id.* ¶ 8.

[8] ECF No. 27 at 7 & n.11.

[9] Chattah Decl. ¶ 7; ECF No. 27 at 6 & n.10.

> acknowledges her "assistance in responding to the allegations in Blundo's motions to dismiss."[10]

Those admissions settle what Mr. Blundo could only allege. Ms. Chattah now swears to the recusal. And the government's own account confirms that she took part in the case anyway. All that strengthens the case for dismissal.

The deadline in particular reveals how far Ms. Chattah's participation went. A deadline to present an indictment is a decision about the prosecution, not a request for a status update. The government insists that the charging decision somehow came earlier, when it sent Mr. Blundo a target letter in May 2025, purportedly before Ms. Chattah knew the investigation existed.[11] But even assuming Ms. Chattah was unaware of the target letter issued under her name, a target letter charges no one; the indictment does.[12] And by the assigned AUSA's own account, he "made the decision to present an indictment" only after he "took over" the case.[13] The previously assigned AUSA left on July 31, 2025, weeks after Ms. Chattah's recusal.[14] On the government's account, the case had sat since at least July 2025 with no progress. Only after her deadline did the case move forward.[15] The recusal barred participation of that kind. The governing regulation bars an employee with a personal or political relationship to the subject

---

[10] ECF No. 27 at 1, 20; Chattah Decl. at 1, 3.

[11] ECF No. 27 at 6, 10.

[12] FED. R. CRIM. P. 7(a)(1) (a felony "must be prosecuted by an indictment"); *United States v. Gouveia*, 467 U.S. 180, 189 (1984) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689–90 (1972) (plurality opinion)) (formal proceedings mark the point at which "the government has committed itself to prosecute") (Sixth Amendment context). Mr. Blundo's contemporaneously filed reply in support of his vindictive-and-selective-prosecution motion addresses the target letter further.

[13] ECF No. 27 at 7.

[14] *Id.*; Chattah Decl. ¶¶ 6, 11.

[15] ECF No. 27 at 7 & n.11.

of a prosecution from participating in it unless her supervisor determines otherwise in writing.[16] Setting a deadline to indict is participation.[17]

The government's explanation for Ms. Chattah's participation—a claimed oral answer from an EOUSA employee—identifies no written authorization from any supervisor. The regulation requires one: the supervisor "shall relieve the employee from participation unless he determines further, in writing, after full consideration of all the facts and circumstances."[18] EOUSA's role is to "coordinate the recusal action" and "obtain necessary approvals for the recusal"; the Justice Manual gives it no role in granting exceptions.[19] And the government does not claim that anyone lifted the recusal, which rested on Ms. Chattah's conceded personal and professional familiarity with Mr. Blundo.[20]

Nor has the government shown that Ms. Chattah received the oral answer as described. Ms. Chattah swears that, after her recusal, she called EOUSA about keeping recused cases from "linger[ing]."[21] Per her account, she "was informed that doing so was not an issue."[22] She does not name the person who informed her or give a date. The government offers no note, email, or other record of the call, and no declaration from the person she spoke with. The assigned

---

[16] 28 C.F.R. § 45.2(a)–(b); *see* 28 U.S.C. § 528.

[17] 28 C.F.R. § 45.2(a).

[18] 28 C.F.R. § 45.2(b).

[19] U.S. Dep't of Justice, JUSTICE MANUAL § 3-1.140 (Recusals), https://www.justice.gov/jm/jm-3-1000-organizationprior-approvals; 28 C.F.R. § 45.2(b) (requiring that the employee's "supervisor" make the written determination).

[20] The government's account of the recusal decision also departs from Department policy. Per Ms. Chattah's declaration, she "recused [her]self" from Mr. Blundo's case. Chattah Decl. ¶ 4. But U.S. Attorneys "cannot recuse themselves"; they "must be recused by the designated Associate Deputy Attorney General." JUSTICE MANUAL § 3-1.140.

[21] Chattah Decl. ¶ 7.

[22] *Id.*

AUSA's statement that he "confirmed this is what she was told" is unsworn, and it too gives no name or date.[23]

And even on Ms. Chattah's account, she asked a general question about "recusal cases in [her] office."[24] Her declaration does not say she asked about this case or about setting a deadline to indict.[25] The government's brief also gives the answer more weight than her declaration does: it calls the source "the DOJ component that approved her self-recusal."[26] Ms. Chattah's declaration does not say that EOUSA approved the recusal. And the Justice Manual assigns a U.S. Attorney's recusal to the designated Associate Deputy Attorney General, not to EOUSA.[27] So the Court should not credit the claimed authorization on these papers. If the government relies on it, the EOUSA employee should testify at the evidentiary hearing.

The government says Ms. Chattah set her deadline because the limitations period for one grant application would run in May 2026.[28] That explanation does not fit the government's claim that her involvement was "minimal."[29] To set her deadline because of that date, she had to know that the case both involved that grant and when Mr. Blundo applied for it. Yet she swears she received no "substantive briefings" and "did not review any of the evidence."[30] So either Ms. Chattah tracked the substance of her rival's case despite her recusal, or the limitations reason did not actually motivate her deadline.[31]

---

[23] ECF No. 27 at 6 n.10.

[24] Chattah Decl. ¶ 7.

[25] *Id.*

[26] ECF No. 27 at 19–20.

[27] *See* Chattah Decl. ¶¶ 5–7; JUSTICE MANUAL § 3-1.140.

[28] ECF No. 27 at 7.

[29] ECF No. 27 at 2, 19.

[30] Chattah Decl. ¶¶ 9–10.

[31] Chattah Decl. ¶¶ 6, 8; ECF No. 27 at 7.

Neither explanation helps the government. If it is the former, she violated a recusal order to prosecute a political rival. If it is the latter, the only reason the government gives for her deadline falls away. Either way, what remains is a recused official pressing for the indictment of her political rival.

What's more, on the government's own account, the statute of limitations gave little reason to hurry. The government names one limitations date, May 2026, which applies to just one count of seven.[32] The government gives no date for the other six. And on the government's view, the four pandemic-loan counts had until 2030 or 2031.[33] Yet the indictment came March 11, 2026: about two months before that May 2026 date, and two days before the candidate-filing deadline (as discussed below).[34] Of those two deadlines, only the filing deadline was close.[35]

Even worse, Ms. Chattah's participation has continued after the indictment too. She appears as counsel for the United States on the response to these motions, and she assisted in preparing it.[36] Congress required rules disqualifying any DOJ officer or employee from a prosecution in which her participation "may result in a personal, financial, or political conflict of interest, or the appearance thereof."[37] Nothing in the government's response suggests that

---

[32] ECF No. 27 at 7; *see* ECF No. 2.

[33] *See* ECF No. 27 at 3 (Paycheck Protection Program and Economic Injury Disaster Loan program); 15 U.S.C. § 636(a)(36)(W), (a)(37)(P), (b)(16) (10-year limitations periods for fraud involving Paycheck Protection Program loans and COVID-19 economic injury disaster loans); ECF No. 2.

[34] ECF No. 2; ECF No. 18 at 12 & n.61.

[35] *See also* Mr. Blundo's contemporaneously filed reply in support of his vindictive-and-selective-prosecution motion (addressing the government's two inconsistent accounts of how this charge came about).

[36] ECF No. 27 at 1, 20; Chattah Decl. at 1, 3, ¶ 1; *see also United States v. Jackson*, 187 F.4th 1198 (9th Cir. 2026) (affirming order disqualifying Ms. Chattah from supervising prosecutions because she was not lawfully serving as acting U.S. Attorney), *petition for cert. filed*, No. 26-304 (U.S. Sept. 8, 2026); *United States v. Garcia*, No. 2:25-cr-00230-DGC-BNW, 2025 WL 2784640, at *4–14 (D. Nev. Sept. 30, 2025).

[37] 28 U.S.C. § 528.

the relationship that required her recusal ended (before or after the decision to indict), and the government identifies no written determination relaxing it. So 28 U.S.C. § 528 and the recusal regulation forbid Ms. Chattah's continued work on this case.

The rest of the government's account appears only in the assigned AUSA's first-person narrative and in no sworn statement, including:

- the assigned AUSA's approval of the May 2025 target letter to Mr. Blundo, which he says he gave as a supervisor before he had the case;
- the assigned AUSA's own later conversation with the EOUSA employee Ms. Chattah had called, in which he says he confirmed what she was told;
- the assigned AUSA's decision to present an indictment, which he says he made after taking over the case when the previously assigned AUSA left on July 31, 2025 (yet acted on it only after Ms. Chattah's deadline); and
- the Criminal Chief's approval of the indictment.[38]

There are various problems with the government's efforts to present these allegations via briefing alone. For starters, those allegations, written in the first person, make the assigned AUSA a witness. Factual statements in a brief do not become evidence because a lawyer signs them. "[L]egal memoranda and oral argument are not evidence," and jurors are instructed that lawyers' statements are not evidence.[39] The government could have put those facts under oath. It chose not to. Its statements can be held against it as admissions, but they do not prove facts in its favor.[40] And "if a party has it peculiarly within his power to produce witnesses whose

---

[38] ECF No. 27 at 6 & n.10, 7 & n.11, 9; *see* Chattah Decl. ¶ 11 (attributing the charging decision to the assigned AUSA "in conjunction with the approval of the Criminal Chief," naming no one and giving no date).

[39] *Brit. Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) (civil summary-judgment context); *Turner v. United States*, 875 F. Supp. 1430, 1433 (D. Nev. 1995) (same); Ninth Cir. Model Crim. Jury Instr. 1.4, 6.7.

[40] *See* FED. R. EVID. 801(d)(2)(A); *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir. 1988) ("[S]tatements of fact contained in a brief may be considered admissions of the party" (emphasis omitted)).

testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable."[41] In brief: the Court can and should draw negative inferences from the government's unusual manner of presenting factual allegations here.

If the government wants those facts credited, the assigned AUSA will have to testify under oath and subject to cross-examination. And under Nevada Rule of Professional Conduct 3.7, a lawyer "shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness."[42] By relying on those facts, the government has made its own counsel a necessary witness to them. Mr. Blundo does not ask the Court to disqualify the assigned AUSA now. His request is narrower than disqualification. The facts the government relies on are not evidence unless the assigned AUSA testifies to them under oath, at the hearing requested below. Mr. Blundo raises Rule 3.7 now to alert the Court to the need for that testimony.

At core, the government identifies no written determination permitting Ms. Chattah's participation in any form. On the government's own account, Ms. Chattah disregarded her recusal to set a deadline for prosecuting her political rival. And she remains on the case. That warrants dismissal or, at a minimum, discovery and an evidentiary hearing.

---

[41] *Graves v. United States*, 150 U.S. 118, 121 (1893). The government knows how to make a sworn showing when it wants to. In *Abrego Garcia*, for example, the government filed a joint affidavit from the Acting U.S. Attorney and other prosecutors, then his supplemental affidavit, and it offered him for cross-examination under oath. *See* Aff. in Supp. of Resp. to Mot., *United States v. Abrego Garcia*, No. 3:25-cr-00115 (M.D. Tenn. Sept. 15, 2025), ECF No. 121-1; Gov't's Opp. to Mot. to Compel at 4–5 & n.1, *Abrego Garcia*, No. 3:25-cr-00115 (M.D. Tenn. Oct. 22, 2025), ECF No. 178; Suppl. Aff., *Abrego Garcia*, No. 3:25-cr-00115 (M.D. Tenn. Oct. 22, 2025), ECF No. 178-1.

[42] NEV. R. PROF'L CONDUCT 3.7(a); LR IA 11-7; *see United States v. Prantil*, 764 F.2d 548, 551–53 (9th Cir. 1985) (reversing a conviction where the prosecutor had personally participated in the events at issue and was a material witness).

### B. The admitted conduct warrants dismissal, and the government's responses do not show otherwise.

Ms. Chattah's participation after her recusal justifies dismissal on both grounds Mr. Blundo raised in his opening motion: the Court's supervisory powers and the Due Process Clause.[43]

As to the first ground, dismissal under the supervisory powers requires flagrant misbehavior, substantial prejudice, and no available lesser remedy. Because that dismissal "encroaches on the prosecutor's charging authority," it requires "a clear basis in fact and law."[44] But "the misconduct need not be intentional."[45] Reckless conduct is enough: "'reckless disregard for the prosecution's constitutional obligations' is sufficient to give rise to flagrant misconduct."[46] Against that backdrop, Ms. Chattah's participation after her recusal is flagrant misbehavior. The indictment it produced prejudiced Mr. Blundo. And a remedy short of dismissal has already been tried: DOJ's recusal of Ms. Chattah, which did not keep her off the case.[47]

As to the second ground (outrageous government conduct), due process separately bars a prosecution where the government's conduct "violates fundamental fairness," a ground "limited to extreme cases" under an "extremely high standard."[48] The same admitted conduct meets that standard (as discussed below). On both grounds, Mr. Blundo's showing draws

---

[43] ECF No. 18 at 5–13.

[44] *United States v. Bundy*, 968 F.3d 1019, 1031 (9th Cir. 2020) (quoting *United States v. Kearns*, 5 F.3d 1251, 1253 (9th Cir. 1993), and *United States v. Chapman*, 524 F.3d 1073, 1087 (9th Cir. 2008)) (internal quotation marks omitted); *Chapman*, 524 F.3d at 1085 (citation omitted); *United States v. Isgro*, 974 F.2d 1091, 1097 (9th Cir. 1992) (citation omitted).

[45] *Bundy*, 968 F.3d at 1038.

[46] *Id.* (internal alteration incorporated) (quoting *Chapman*, 524 F.3d at 1085).

[47] ECF No. 18 at 9–13.

[48] *United States v. Black*, 733 F.3d 294, 302 (9th Cir. 2013) (cleaned up); *accord United States v. Stinson*, 647 F.3d 1196, 1209 (9th Cir. 2011).

largely on the government's own admissions. The government's answer rests mainly on unsworn assertions and on descriptions of records it has not produced.

The government offers four responses, and none is persuasive. The government's first response goes to the outrageous-conduct ground, and its other three go, in order, to the supervisory-powers elements:

- First, the government claims that outrageous conduct "exists only in 'that slim category of cases in which the police have been brutal,'" and that the defense is "generally unavailable" where the criminal enterprise preceded the government's involvement;[49]
- Second, per the government, there was no misconduct because Ms. Chattah's "minimal involvement" was permitted by "the DOJ component that approved her self-recusal," and in any event "there is nothing flagrant about her conduct" purportedly because Mr. Blundo "received the 'disinterested prosecutor' he claims he seeks";[50]
- Third, the government claims there was no prejudice because the investigation was never closed, because Mr. Blundo "submits absolutely no evidence" that the indictment kept him from running for office, because the earlier target letter did not deter him from seeking office, and not running for office "was his choice";[51] and
- Fourth, the government claims dismissal is unnecessary because (it says) Ms. Chattah could be ordered to "refrain from any further involvement in this matter."[52]

**1. The government's proposed limits—police brutality and crimes already in progress—do not bar dismissal on either ground.**

*First*, the government's proposed limits rest on *Black* and *Haynes*.[53] Neither case confines outrageous-conduct claims to police brutality.

---

[49] ECF No. 27 at 17–18 (citing *Black*, 733 F.3d at 302; *United States v. Haynes*, 216 F.3d 789, 797 (9th Cir. 2000); and *United States v. Nolan-Cooper*, 155 F.3d 221, 233 (3d Cir. 1998)).

[50] ECF No. 27 at 19.

[51] ECF No. 27 at 19–20.

[52] ECF No. 27 at 20.

[53] *Contra* ECF No. 27 at 17–18.

Start with *Black*. The "slim category" language the government attributes to that case simply does not appear anywhere in it. Those words instead come from *Bogart*, which explicitly declined to adopt the "slim category" limitations the government insists on here.[54] *Black*, for its part, similarly disclaims any "bright line" for outrageous conduct.[55] The upshot: contra the government's misattributions otherwise, the government's own authority rejects the police-brutality limit it proposes:

| **What the government says *Black* holds** | **What *Black* and *Bogart* actually say** |
|---|---|
| Outrageous government conduct "exists only in 'that slim category of cases in which the police have been brutal, employing physical or psychological coercion against the defendant.'"[56] | *Black*: "[T]here is no bright line dictating when law enforcement conduct crosses the line between acceptable and outrageous."[57]<br><br>*Bogart*: "We have not accepted the view that this highly discrete group of extreme cases of police brutality defines the limits of unconstitutionally outrageous governmental conduct."[58] |

*Haynes* does not help the government either. It holds that the defense is "generally unavailable where the criminal enterprise was already in progress before the government became involved"—a rule about the government's role in creating the crime.[59] None of the government's authorities involves what a recused prosecutor did to the prosecution—Mr. Blundo's claim here. And none reaches the supervisory-powers ground at all.

---

[54] *United States v. Bogart*, 783 F.2d 1428, 1436 (9th Cir. 1986), *vacated in part on other grounds sub nom. United States v. Wingender*, 790 F.2d 802 (9th Cir. 1986); *see id.* at 1435 (describing the brutality-only view and citing *United States v. Kelly*, 707 F.2d 1460, 1476 n.13 (D.C. Cir. 1983) (per curiam)).

[55] *Black*, 733 F.3d at 302.

[56] ECF No. 27 at 17 (attributing the quoted words to *Black*, 733 F.3d at 302).

[57] *Black*, 733 F.3d at 302; *see* ECF No. 18 at 7.

[58] *Bogart*, 783 F.2d at 1436.

[59] *Haynes*, 216 F.3d at 797; *see* ECF No. 27 at 18.

The Ninth Circuit has affirmed supervisory-power dismissals for misconduct in the prosecution itself:

- In *Chapman*, a securities-fraud prosecution, the Ninth Circuit affirmed a supervisory-power dismissal because the prosecutor withheld more than 650 pages of impeachment material until after some of the government's witnesses had testified.[60]
- In *Bundy*, the Ninth Circuit affirmed a supervisory-power dismissal of charges arising from the 2014 Bunkerville standoff because the government withheld surveillance-camera evidence, FBI reports, and threat assessments.[61]
- In *Samango*, the Ninth Circuit affirmed a supervisory-power dismissal of an indictment because of how the prosecutor presented the case to the grand jury.[62]

The outrageous-conduct ground reaches such misconduct too. In *Marshank*, a district court in this circuit dismissed an indictment on due-process and other grounds because the government had worked with the defendant's own lawyer to investigate and prosecute him.[63]

None of those four cases involved "police" "brutal[ity]."[64] In each, the charged crimes came before the government's misconduct. So the government's proposed limits are no bar to dismissal on either ground.

**2. Ms. Chattah's conduct was flagrant misbehavior and violates fundamental fairness.**

*Second*, the government's own account shows flagrant misconduct.[65] Ms. Chattah now swears that she was recused from this prosecution.[66] Yet, per the government, she set a deadline

---

[60] *Chapman*, 524 F.3d at 1080, 1088–89.

[61] *Bundy*, 968 F.3d at 1030–31.

[62] *United States v. Samango*, 607 F.2d 877, 884–85 (9th Cir. 1979).

[63] *United States v. Marshank*, 777 F. Supp. 1507, 1521–24, 1530 (N.D. Cal. 1991); *see* ECF No. 18 at 7 n.33.

[64] *Contra* ECF No. 27 at 17–18.

[65] *Contra* ECF No. 27 at 18–19.

[66] Chattah Decl. ¶¶ 4, 6.

for prosecuting Mr. Blundo.[67] That is a decision about the prosecution, made by a recused official. Ms. Chattah also requested status updates after her recusal and, after the indictment, helped prepare the response to these motions (as discussed above).[68]

The recusal rule protects the disinterest that due process requires of a prosecutor. So disregarding the recusal is disregarding a constitutional obligation—the kind of disregard *Chapman* and *Bundy* treat as flagrant.[69] Ms. Chattah knew of the bar: she sought the recusal herself.[70] As a result, her conduct was at least reckless disregard.[71] Reckless disregard is enough to show flagrant misbehavior. *Chapman* said so, though the district court there had also found bad faith.[72] And *Bundy* affirmed a dismissal on a finding of recklessness.[73] In *Chapman*, the prosecutor kept no log of what he had disclosed. Yet he told the court he had met his disclosure duties "when he knew full well that he could not verify these claims."[74] In *Bundy*, the Ninth Circuit upheld the finding that the government's nondisclosures "crossed the threshold from negligence to recklessness."[75] In both cases, the government knew of its obligation and did not meet it. So too here. Ms. Chattah's knowledge of the bar was more direct than the government's in either case.

The government insists that the indictment's approval process "followed the normal process."[76] It did not. The normal process required a supervisor's written determination before

---

[67] ECF No. 27 at 7 & n.11.

[68] Chattah Decl. ¶ 8; ECF No. 27 at 1, 20.

[69] *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 249–50 (1980); *see Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807–14 (1987); ECF No. 18 at 7–8.

[70] Chattah Decl. ¶¶ 3–5; ECF No. 27 at 6.

[71] *See Bundy*, 968 F.3d at 1038, 1041.

[72] *Chapman*, 524 F.3d at 1085, 1088–89.

[73] *Bundy*, 968 F.3d at 1030–31.

[74] *Chapman*, 524 F.3d at 1085.

[75] *Bundy*, 968 F.3d at 1042.

[76] ECF No. 27 at 10.

a recused official could take part in a case.[77] But here, Ms. Chattah took part, relying (she says) on an oral answer from an unnamed EOUSA employee.[78] And the normal process, on the government's own account, left the Executive Assistant United States Attorney "ultimately responsible for this case" once Ms. Chattah was recused.[79] But here, Ms. Chattah set the deadline to indict.[80] None of that is "normal."[81]

Ms. Chattah's reliance on a claimed oral answer, and her deadline, are "[d]epartures from the normal procedural sequence."[82] Such departures "might afford evidence that improper purposes are playing a role."[83] That evidence goes to flagrancy. Nor does it help the government that, on its own account, a disinterested prosecutor made the charging decision. An independent prosecutor's review does not cure the taint: "[W]here, as here, a prosecution is premised on the fruits of constitutionally tainted behavior, [this Court] cannot permit the prosecution to continue, notwithstanding attempts to launder the taint by presenting the fruits to an independent prosecutor."[84] And Ms. Chattah's participation changed at least one decision: when to indict. Per the government, the case did not move until she set her deadline (as discussed above).[85]

---

[77] 28 C.F.R. § 45.2(b).

[78] Chattah Decl. ¶¶ 7–8; ECF No. 27 at 6 & n.10.

[79] ECF No. 27 at 9.

[80] *Id.* at 7 & n.11.

[81] *Compare* ECF No. 27 at 6 & n.10, 7 & n.11, 9–10, *with* 28 U.S.C. § 528, *and* 28 C.F.R. § 45.2(b) (requiring a supervisor's written determination), *and* JUSTICE MANUAL § 3-1.140.

[82] *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977).

[83] *Id.*

[84] *United States v. P.H.E., Inc.*, 965 F.2d 848, 859 (10th Cir. 1992).

[85] *Contra* ECF No. 27 at 19; *see id.* at 7 & n.11. Even if the deadline had changed no decision, Ms. Chattah's participation was itself the violation: the recusal barred it, and it continues. *See Young*, 481 U.S. at 810–11 (plurality opinion); *Marshall*, 446 U.S. at 249–50. So the admitted conduct is flagrant misbehavior either way.

The same conduct violates fundamental fairness. DOJ recognized Ms. Chattah's conflict.[86] Yet she disregarded her recusal to set the deadline for charging her political rival. And the indictment came two days before Nevada's candidate-filing deadline.[87] Those facts make this case one of the "extreme cases" the due-process standard reaches.[88] The government offers no separate defense of the due-process ground, addressing it only "[f]or the reasons above."[89]

The upshot: Ms. Chattah's conduct was flagrant misbehavior. And it violates fundamental fairness.

#### 3. The indictment prejudiced Mr. Blundo.

*Third*, the indictment itself prejudiced Mr. Blundo. Because a recused prosecutor took part in bringing it, it was prejudicial per se and requires no further showing of harm.[90] But if more were necessary, its timing prejudiced him too.[91] Substantial prejudice asks what the misconduct did to the defendant.[92] Here, the misconduct produced an indictment returned on March 11, 2026, two days before Nevada's March 13 candidate-filing deadline.[93] That timing kept Mr. Blundo from running this cycle, a harm separate from being charged at all.[94] On the government's own account, the case sat until Ms. Chattah set her deadline. After Ms. Chattah's

---

[86] Chattah Decl. ¶¶ 4, 6.

[87] ECF No. 2; ECF No. 18 at 12 & n.61.

[88] *Stinson*, 647 F.3d at 1209 (quotation omitted).

[89] ECF No. 27 at 20; *see* ECF No. 18 at 13.

[90] *E.g.*, *Young*, 481 U.S. at 809–14 (plurality opinion) (treating a conflicted prosecution as requiring reversal without harmless-error review); *P.H.E., Inc.*, 965 F.2d at 859.

[91] *Contra* ECF No. 27 at 19–20.

[92] *Chapman*, 524 F.3d at 1087–88; *see Young*, 481 U.S. at 809–14 (plurality opinion); ECF No. 18 at 12.

[93] ECF No. 2; ECF No. 18 at 12 & n.61; NEV. SEC'Y OF STATE, Filing for Non-Judicial Office, https://perma.cc/N4YL-V922 (identifying a March 13, 2026, filing deadline).

[94] *See id.*

deadline, the assigned AUSA took the case to the grand jury, which returned the indictment (as discussed above).[95] The government asks why a target letter did not deter Mr. Blundo if an indictment did. That question has a simple answer: a target letter is not an indictment.[96]

The government's claim that Mr. Blundo submitted "absolutely no evidence" on the filing deadline fails too.[97] Mr. Blundo did submit evidence of the indictment's timing against that deadline.[98] And through counsel, he represented that the indictment kept him from running this cycle.[99] If the government disputes that, the dispute is a fact question for the hearing. Nor does the government's "his choice" claim help it. Substantial prejudice asks what the misconduct did to Mr. Blundo, not whether the law allowed him to run while under indictment.[100] So the prejudice element is met.

**4. No lesser remedy remains.**

*Fourth*, the lesser remedy the government proposes—an order that Ms. Chattah "refrain from any further involvement in this matter"—has been tried, and it failed.[101] By her own admission, DOJ recused Ms. Chattah.[102] Yet she participated anyway.[103] She requested status updates, set the indictment deadline, and helped prepare the response to these motions (as

---

[95] ECF No. 27 at 7 & n.11.

[96] Ex. J (ECF No. 17-11) (specifically identifying the possibility of a resolution "short of a Federal Indictment"). That letter, too, went out during Ms. Chattah's tenure: on May 19, 2025, seven weeks after she took office—and after the AUSA received the investigative file on March 21, 2025. ECF No. 27 at 6–7; ECF No. 27-3 at 2; Chattah Decl. ¶ 1. The full sequence is set out in Mr. Blundo's contemporaneously filed reply in support of his vindictive-and-selective-prosecution motion.

[97] *Contra* ECF No. 27 at 19.

[98] ECF No. 2; ECF No. 18 at 12 & n.61.

[99] ECF No. 17 at 14; ECF No. 18 at 12.

[100] *Contra* ECF No. 27 at 20; *see Chapman*, 524 F.3d at 1087–88.

[101] *Contra* ECF No. 27 at 20.

[102] Chattah Decl. ¶ 6.

[103] Chattah Decl. ¶¶ 6, 8; ECF No. 27 at 7 & n.11, 20.

discussed above).[104] The government offers no reason to think an order to "refrain" would stop her when the recusal did not.

As Mr. Blundo has already explained, the recusal was the lesser remedy, and it failed; the government does not address that showing.[105] An order to refrain would add nothing to what the recusal already required.[106] And it would leave in place the indictment Ms. Chattah's deadline produced. The supervisory power exists to remedy and to deter.[107] An order that repeats the violated recusal would do neither.[108] So no lesser remedy remains.

Dismissal without prejudice would not cure the violation either.[109] It would let the same office, with Ms. Chattah still on the case, re-indict Mr. Blundo. So the dismissal should be with prejudice.

* * *

Ms. Chattah set the deadline to indict Mr. Blundo while recused, and she remains on the case. That conduct is flagrant misbehavior, and it violates fundamental fairness. It prejudiced Mr. Blundo: the indictment it produced kept him from running this cycle. And no lesser remedy remains: the recusal was tried and failed, and dismissal without prejudice would let the same office re-indict him. That warrants dismissal with prejudice.

### C. At a minimum, the Court should order discovery and hold an evidentiary hearing.

If the Court does not dismiss on the present record, it should order discovery on the recusal and hold an evidentiary hearing. A pretrial motion warrants a hearing where the moving

---

[104] Chattah Decl. ¶ 8; ECF No. 27 at 1, 7 & n.11, 20.

[105] *Compare* ECF No. 18 at 13 (identifying the recusal as the lesser remedy that failed), *with* ECF No. 27 at 20 (not addressing that argument).

[106] *See* ECF No. 18 at 13.

[107] *United States v. Hasting*, 461 U.S. 499, 505 (1983); *Chapman*, 524 F.3d at 1085.

[108] *Hasting*, 461 U.S. at 505–06; *Chapman*, 524 F.3d at 1085.

[109] The government does not argue that dismissal without prejudice would cure the violation. *See generally* ECF No. 27 at 18–20.

papers allege facts "with sufficient definiteness, clarity, and specificity" to show that contested issues of fact exist.[110] The facts here meet that standard. At least three potentially relevant facts here are contested: whether any written determination exists; who at EOUSA spoke with Ms. Chattah and what was said; and when and how she set the deadline for Mr. Blundo's indictment.

The government has produced none of the records that would resolve these facts. It has provided no written determination, no record of the EOUSA call, and no record of the deadline—only descriptions in a brief and a declaration (as discussed above). Those records are the government's alone. The government chose to answer Mr. Blundo's showing with unsworn statements. So the Court should not resolve the disputed facts in the government's favor on the papers. In his contemporaneously filed reply on his vindictive-and-selective-prosecution motion, Mr. Blundo sets out other conflicts between the government's account and the record. He also lists additional discovery requests.

At the hearing, the Court should take testimony from Ms. Chattah, from the assigned AUSA on the first-person facts in the government's response, and from the EOUSA employee. Before the hearing, the Court should order the government to produce, in addition to the discovery requested in that reply:

- any written determination under 28 C.F.R. § 45.2(b) permitting Ms. Chattah's participation, or a statement that none exists;
- every record of her contact with EOUSA about recused cases, identifying the employee and the date; and
- every communication setting or discussing the deadline, with its date, form, and recipients.

## III. CONCLUSION

DOJ recused Ms. Chattah from this case. The government now confirms that she participated anyway, up to setting the deadline for the indictment. And it identifies no written determination authorizing any of that. The Court should dismiss the indictment with prejudice.

---

[110] ECF No. 18 at 14; *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000).

At a minimum, it should order discovery and hold an evidentiary hearing at which the witnesses named above testify.

Dated: October 13, 2026.

RENE L. VALLADARES
Federal Public Defender

By: */s/ Sean A. McClelland*

SEAN A. MCCLELLAND
Assistant Federal Public Defender

*/s/ Heidi Ojeda*

HEIDI A. OJEDA
Assistant Federal Public Defender